United States District Court
Southern District of Texas
**ENTERED**
February 01, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ROGELIO REGALADO, §
    Plaintiff, §
§
vs. § CIV. NO. 7:22-cv-228
§
CITY OF EDINBURG, §
    Defendant. §

**REPORT AND RECOMMENDATION**

Plaintiff, Rogelio Regalado, proceeding *pro se*, initiated this civil action against the

Defendant, the City of Edinburg, on July 6, 2022, in the 206th Judicial District Court of Hidalgo

County, Texas. (Dkt. No. 1.) On July 17, 2022, the Defendant removed said cause of action to

the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1446(a).

*Id.* In the Complaint, Plaintiff alleges a deprivation of his constitutional rights during his arrest

and subsequent detention on or about December 7, 2021, and requests relief pursuant to 42 U.S.C.

§ 1983. (Dkt. No. 1-2.) On July 29, 2022, Defendant filed a motion to dismiss Plaintiff's

Complaint. (Dkt. No. 3.) On September 6, 2022, Plaintiff filed a motion requesting permission to

supplement his complaint. (Dkt. No. 7.) On September 9, 2022, Plaintiff's motion to supplement

complaint was granted. (Dkt. No. 10.) On October 11, 2022, Plaintiff filed his supplemented

complaint (Dkt. No. 22)[1] and a response to Defendant's motion to dismiss (Dkt. No. 23). On

October 27, 2022, Plaintiff filed a request for permissive intervention and/or request for leave to

---

[1] Plaintiffs original petition is incorporated by reference into Plaintiffs supplemental petition. *See* Dkt. No. 22 at 4; *see also Stewart v. City of Houston Police Dept.*, 372 F. App'x 475, 478 (5th Cir. 2010) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporate by reference the earlier pleading." (quoting *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994))).

1

file an amicus brief. (Dkt. No. 24.) On November 8, 2022, Defendant filed a motion to dismiss Plaintiff's amended complaint. (Dkt. No. 25.) On November 21, 2022, Plaintiff filed a motion requesting appointment of counsel. (Dkt. No. 26.) On November 25 and 28, 2022, respectively, Plaintiff filed a motion requesting to amend and/or supplement his amended complaint and a response to Defendant's motion to dismiss his amended complaint. (Dkt. Nos. 27, 28.) On November 30, 2022, Defendant filed a response to Plaintiff's motion to amend his amended complaint and "Reply to Plaintiff's Response to Motion to Dismiss as to Plaintiff's First Amended Complaint." (Dkt. Nos. 29, 30.) On December 1, 2022, Plaintiff filed "Request for Leave to Amend/Supplement/Proposed 3rd Amended Complaint, or alternatively, Declaration in Support of Complaint." (Dkt. No. 31.)

On December 12, 2022, Plaintiff filed a motion requesting class certification under Rule 23 regarding the bail bond schedule used by the City of Edinburg. (Dkt. No. 32.) On December 16, 2022, Plaintiff filed an additional response to Defendant's "Reply to Plaintiff's Response to Motion to Dismiss as to Plaintiff's First Amended Complaint," as well as "Motion to Remand and/or Sever and Remand." (Dkt. Nos. 34, 35.)

On January 4, 2023, Defendant filed "Response to Plaintiff's Motion for Leave to Amend/Supplement Proposed Third Amended Complaint" and "Response to Plaintiff's Motion for Class Certification." (Dkt. Nos. 38, 39.) On January 9, 2023, Defendant filed "Response to Plaintiff's Motion to Remand, or, In the Alternative, Motion to Sever and Remand." (Dkt. No. 40.)

As of December 19, 2022, outside of the noted responses filed in early January by Defendant, an Order was issued that no other pleading or motions would be considered pending

2

review and resolution of the matters pending before the Court.[2]  In direct violation of the Order prohibiting any further motions (Dkt. No. 36), Plaintiff has filed two additional motions with this Court.  On January 23, 2023, Plaintiff filed a motion requesting sanctions against Defendant and a motion requesting leave to amend his third amended complaint.  (Dkt. Nos. 41, 42).

After careful consideration of the pleadings and relevant case law, the undersigned recommends that "Defendant's Motion to Dismiss as to Plaintiff's First Amended Complaint" (Dkt. No. 25) be **GRANTED**.

The undersigned recommends that Plaintiff's "Special Motion for Appointment of Counsel" (Dkt. No. 26), "Request for Leave to Amend/Supplement and Plaintiff's Second Amended Complaint" (Dkt. No. 27), "Request for Leave to Amend/Supplement/Proposed 3rd Amended Complaint" (Dkt. No. 31), "Request for Leave to Amend/Supplement/Proposed 4th Amended Complaint" (Dkt. No. 42) all be **DENIED**.  The undersigned recommends that Plaintiff's request for class certification and appointment of counsel (Dkt. No. 32) and motion to sever and/or remand (Dkt. No. 35) be **DENIED**.  The undersigned recommends that Plaintiff's "Request for Leave to File Motion for Sanctions" (Dkt. No. 41) be **DENIED** as moot.

And, the undersigned recommends that Defendant's first motion to dismiss (Dkt. No. 3) be **DENIED** as moot and that Plaintiff's Original Petition and Amended Complaint (Dkt. Nos. 1-2, 22) be **DISMISSED with prejudice** for failure to state a claim and this matter be closed out.

---

[2] In an Order issued on Dec. 14, 2022, the undersigned denied Plaintiff's Request for Permissive Intervention and/or Request to Leave to File Amicus Brief.  (Dkt. No. 33.)  As the request was not dispositive of the claims, the undersigned was able to rule on said motion.  *See* 28 U.S.C. § 636(b)(1)(A), (B); *see also Ramirez v. Davis*, No. 7:18-CV-386, 2019 WL 4454399, at *1 n.1 (S.D. Tex. July 22, 2019), *report and rec. adopted*, No. CV M-18-386, 2019 WL 4451372 (S.D. Tex. Sept. 17, 2019) ("In general a magistrate judge may rule on non-dispositive matters but may make only recommendations as to dispositive matters." (citations omitted)).

## I. BACKGROUND

On or about December 7, 2021, Plaintiff was arrested by the Edinburg Police Department under a parole warrant. (Dkt. No. 1-2 at 2, ¶5.1.) At the time of arrest, Plaintiff was also charged with possession of marijuana, possession of a controlled substance, and criminal trespassing. (*Id.* at 1-2, ¶5.1.) The next day, Plaintiff was arraigned on the charges without the assistance of counsel and bond was set totaling $45,000 ($35,000 for possession of a controlled substance, $5,000 for possession of marijuana, and $5,000 for criminal trespassing). (*Id.*) On March 15, 2022, Plaintiff was convicted of criminal trespass. (Dkt. No. 25-1, Ex. A.)

Plaintiff alleges a series of constitutional violations. First, Plaintiff alleges that he was subject to excessive bail in violation of the Eighth Amendment. (Dkt. No. 1-2 at 4, ¶6.3.) Second, Plaintiff alleges that he requested counsel at the arraignment hearing and counsel was not appointed, in violation of Sixth Amendment right to counsel. (*Id.* at 5, ¶6.4.) Third, Plaintiff alleges he was wrongfully arrested for the charge of possession of a controlled substance in violation of the Fourth Amendment. (Dkt. No. 1-2 at 3, ¶6.1.) Specifically, Plaintiff argues that he lawfully purchased "a bake vaporizing device that contained cannabidiol (CBD) Delta 8, which was legal in the State of Texas at the time the charges were filed." (*Id.*) Plaintiff argues that pursuant to said wrongful arrest, the Edinburg Police Department conspired to violate his constitutional right to be free from illegal seizure of his personal property, specifically Plaintiff's vaporizing device. (Dkt. No. 22 at 6, ¶3.) Fourth, Plaintiff alleges that while in custody he was subject to cruel and unusual punishment in violation of the Eighth Amendment (Dkt. Nos. 1-2 at 4, ¶6.2; 22 at 6, ¶2), specifically that he "was held in an extremely cold cell and was not provided with any blankets or other means of warmth" (*id.* at 6, ¶2), was denied medical care until he had a seizure (*id.* at 4, ¶V), and was given nutritionally deficient food (*id.* at 6, ¶¶2, 5). Fifth, Plaintiff

4

alleges that Defendant intentionally inflicted emotional distress on Plaintiff when Defendant denied him medical and psychiatric attention while in custody. (Dkt. No. 22 at 6, ¶4.) Sixth, Plaintiff argues that Defendant negligently trained the officers, employees, agents, or contractors regarding the above-mentioned allegations made by Plaintiff. (Dkt. No. 22 at 6, ¶6.) Pursuant to these claims, Plaintiff is seeking actual and special damages of more than $1,000,000, injunctive relief, declaratory relief, and prospective relief against Defendant. (*Id.* at 4, ¶VI.)

In response to Plaintiff's amended complaint, Defendant filed a motion to dismiss, arguing that the facts, even if taken as true, do not entitle the Plaintiff to relief. (Dkt. No. 25.) Furthermore, Defendant argues that even if the facts alleged did give rise to a potential § 1983 claim, qualified immunity prevents the City of Edinburg from being liable for constitutional violations of its employees so the complaint must be dismissed. (*See generally id.*)

Subsequently, and will be addressed within this report as well, on November 25, 2022, Plaintiff filed "Request for Leave to Amend/Supplement and Plaintiff's Second Amended Complaint." (Dkt. No. 27.) Within this request Plaintiff detailed the nature of his medical history (*id.* at 2, ¶¶1.3, 1.4; 7-8, ¶¶1.8, 1.9), provided more details regarding conditions of confinement (*id.* at 3-5, ¶¶1.5, 1.6), and detailed the medical attention received while incarcerated (*id.* at 6, ¶1.7.). Also, in Plaintiff's second amended complaint, Plaintiff seeks to add additional causes of action, including claims under the Civil Rights of Institutionalized Persons Act of 1980, the American with Disabilities Act of 1990, and the Rehabilitation Act of 1973. (*Id.* at 8, ¶2.1.) Further, Plaintiff seeks to join additional defendants as parties to the suit, including Judge Hector Bustos, Edinburg City Council members, John Doe Officers #2 and #3, former Mayor Richard Molina, and former Municipal Judge Toribio ("Terry") Palacios. (*Id.* at 9, ¶¶3.1, 3.2, 3.3.)[3]

---

[3] Plaintiff's complaints arise from an incident that occurred on or about December 7, 2021. At that time, the Mayor of the City of Edinburg was Richard Molina. Richard Molina lost his re-election bid as Mayor

On December 1, 2022, Plaintiff filed "Request for Leave to Amend/Supplement/Proposed 3rd Amended Complaint, or Alternatively, Declaration in Support of Complaint." (Dkt. No. 31.) Within this request Plaintiff alleges that the bail setting scheme is unconstitutional because, when setting bail, the judges do not consider the defendant's ability to pay. (*Id.* at 2, ¶1.3.) Plaintiff asserts that the failure to account for the defendant's ability to pay violates the Equal Protection and Due Process Clauses of the United States and Texas State Constitutions because it effectively discriminates against indigent offenders. (*Id.* at 3, ¶1.4.) Plaintiff sets out additional arguments on why he believes the municipal judges should be held responsible as policymakers and why Defendant should be held liable based on the actions of the jailers as well as in consideration of the conditions Plaintiff was held in while in custody. (*Id.* at 4, ¶1.5, 5, ¶ 1.5.2, 9, ¶1.5.7.) Plaintiff also sets out claims that the two unknown jailers conspired against Plaintiff and wrongfully charged him with possession of controlled substance as well as delayed medical attention and that one of the jailers conspired with an employee of the urgent care facility Plaintiff was taken to deny Plaintiff proper medical attention. (*Id.* at 11, ¶1.7.) Plaintiff further argues that Municipal Judge Bustos and the two unknown jailers violated Plaintiff's constitutional rights regarding bail and unlawful charges per 42 U.S.C. § 1985 (*id.* at 11, ¶1.8), and that former Municipal Judge Palacios

---

of Edinburg in November 2021 and the new mayor, Ramiro Garza, Jr. was sworn in on December 20, 2021. *Garza sworn in as next Mayor of Edinburg,* Edinburg Daily Review (Dec. 21, 2021), https://edinburgdailyreview.com/garza-sworn-in-as-next-mayor-of-edinburg-dias-de-leon-council-members/. In December of 2021, Municipal Judge Toribio "Terry" Palacios stepped down as municipal judge after serving 27 years in that position for City of Edinburg; at the time, Judge Palacios swore in his permanent replacement – Municipal Judge Hector Bustos. *Judge "Terry" Palacios Honored for his Years of Service,* Texas Border Business (Dec. 8, 2021), htttps://texasborderbusines.com/judge-terry-palacios-honored-for-his-years-of-service-announces-bid-hidalgo-county-district attorney/. In February 2017, Municipal Judge Hector Bustos had been sworn as temporary judge to fill in when the permanent municipal judge (Judge Palacios) was unavailable. *Additional Temporary Judge Sworn In,* ValleyCentral.com (Feb. 15, 2017; updated Feb. 16, 2017), https://www.valleycentral.com/news/local-news/additional-temporary-judge-sworn in. *See also Crear v. JPMorgan Chase Bank,* 491 F. Supp. 3d 207, 212 (N.D.Tex. 2020) (in reviewing a motion to dismiss per Rule 12(b)(6), factual information is limited to (1) facts within the complaint, (2) documents, if any, attached to the complaint, and (3) "matters of which judicial notice may be taken" under Fed. R. Evid. 201(b)) (citation omitted)).

violated Plaintiff's constitutional rights as to bail and court appointed counsel per 42 U.S.C. § 1983 (*id.* at 12, ¶1.9).

On November 30, 2022, Defendant filed "Reply to Plaintiff's Response to Motion to Dismiss as to Plaintiff's First Amended Complaint," once again articulating and arguing that Plaintiff has still failed to state a claim, and thus, the request to amend should be denied. (Dkt. No. 30.)

On December 12, 2022, Plaintiff filed for the first time "Motion for Class Certification (Under Fed. R. Civ. P. 23)/Unsworn Declaration in Support of Motion for Appointment of Counsel." (Dkt. No. 32.) Within the motion, Plaintiff submits that he should be allowed to represent others, like him, who are arrested in the City of Edinburg for Class A and Class B misdemeanors. (*Id.* at 2, ¶1.2.) Plaintiff also sets out request for counsel to assist Plaintiff in such class action lawsuit due to the complexities of such a case. (*Id.* at 3, ¶1.6.)

On December 16, 2022, Plaintiff filed "Memorandum in Response to Defendant's Reply." (Dkt. No. 34.) In Plaintiff's response, he continues asserting the same legal theories of recovery, but provides greater case law in support. And, on December 16, 2022, Plaintiff also filed a motion to remand and/or remand and sever his complaint. (Dkt. No. 35.) In Plaintiff's motion to remand, he asserts, for the first time, that all of his claims are brought pursuant to the Texas State Constitution, not the United States Constitution; arguing that this Court lacks jurisdiction to hear the claims. (*Id.* at 2.)

On January 4, 2023, Defendant filed a response to Plaintiff's third amended complaint, arguing that Plaintiff's arguments still lack merit and the request to amend should be denied. (Dkt. No. 38.) Further, on same date, Defendant filed a response to Plaintiff's request to certify a class pursuant to Rule 23 arguing that the proposed class members, including Plaintiff, lack standing to

sue Defendant, the City of Edinburg, and, in the alternative, that Plaintiff cannot meet the statutory requirements under Fed. R. Civ. P. 23 to warrant a certification of class action lawsuit. (Dkt. No. 39 at 2-3, ¶3, 4-9, ¶¶6-12.) On January 9, 2023, Defendant filed a response in opposition to Plaintiff's request to remand or, in the alternative, sever and remand, the case back to state court. (Dkt. No. 40.) Defendant argues that the original asserted cause of action involved claims against the Defendant arising under both the Constitution and federal law providing this Court with proper jurisdiction and for those claims solely rising under state law, the Court may address them under supplemental jurisdiction pursuant to 28 U.S.C. §1367 (a), (c). (*Id.* at 1-2, ¶¶1, 2.)

On January 23, 2023, in violation of Court Order, Plaintiff filed a motion requesting leave to file sanctions against Defendant and a motion to amend his third amended complaint. (Dkt. Nos. 41, 42.)[4]

## II. **STANDARD OF REVIEW**

The Federal Rules of Civil Procedure require that each claim in a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The claims must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It follows, that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"

---

[4] Considering Plaintiff's status as *pro se* litigant, the undersigned reviewed the improperly filed fourth amended complaint (Dkt. No. 42) and finds that the pleading does not contain any additional facts not already presented in prior pleadings and, importantly, nothing contained in the pleading is sufficient to change the conclusion reached nor the legal analysis contained within this recommendation. Because this recommendation concludes that removal was proper, Plaintiff's request for sanctions due to improper removal (Dkt. No. 41) is moot and does not require additional analysis. As such, the arguments within the pleadings filed in violation of the Court Order (Dkt. No. 36) will only be addressed when necessary.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570) (alteration in original).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion for dismissal. First, the Court identifies conclusory allegations and proceeds to disregard them, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 681. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (internal quotation marks and citations omitted).

The Court must accept as true all well-pleaded facts contained in Plaintiff's Complaint and view them in the light most favorable to Plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996) (citing *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992)). In determining whether to grant a motion to dismiss, a district court may generally not "go outside the complaint." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).[5] The threshold issue raised by the Defendant's motion to dismiss is whether, taking all factual allegations as true, Plaintiff has stated enough factual evidence supporting a 42 U.S.C. § 1983 claim against Defendant.

## III. ANALYSIS

### A. False Arrest and Wrongful Imprisonment[6]

---

[5] *See also supra* n.3.

[6] In Plaintiff's request for fourth amended complaint, he attempts to allege a malicious prosecution claim based on Sixth Circuit case law. (Dkt. No. 42 at 8, ¶¶2.5, 2.6.) While the Sixth Circuit precedent is not binding on this court, even if it was, Plaintiff would not have a valid claim. As addressed within this report, Plaintiff has not presented any facts showing a lack of probable cause for the arrest or underlying charges; rather, he alleges, in a conclusory fashion, that the police had no probable cause to arrest. (*Id.*) Because Plaintiff provided no additional facts in this last request, the analysis within this recommendation regarding

Plaintiff alleges that on December 7, 2021, he was wrongfully arrested for possession of controlled substance containing cannabinoid Delta 8, which, according to Plaintiff, was legal in Texas at the time of arrest. (Dkt. No. 1-2 at 3, ¶6.1.) In response, Defendant argues that Plaintiff's claim fails because Plaintiff was subsequently convicted of criminal trespass, pursuant to his arrest on December 7, 2021. *See* Dkt. No. 25-1, Ex. A. As such, Defendant asserts that Plaintiff cannot challenge his arrest because there was probable cause to arrest, evidenced by his subsequent conviction. (*Id.* at 3.) Defendant also argues that Plaintiff's claim must be dismissed because a local government cannot be liable for constitutional violations of employees unless it is done through an official policy. (Dkt. No. 25 at 3-4.)

Upon review of the relevant case law, Plaintiff's claim fails for two reasons – (i) Plaintiff has not alleged any facts giving rise to a constitutional violation and (ii) Plaintiff has not identified an official policy or policymaker as the cause of the alleged constitutional violation, as required for government liability. Each will be addressed in turn below.

i.   No Constitutional Violation

Title 42 U.S.C. § 1983 provides recovery of damages when a person is deprived of their federal constitutional rights by a person acting under color of state law. "Claims of false arrest, false imprisonment, and malicious prosecution involve the guarantees of the fourth and fourteenth amendments when the individual complains of an arrest, detention, and prosecution without probable cause." *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988). In other words, "[t]he constitutional torts of false arrest, unreasonable seizure, and false imprisonment … require

---

the constitutionality of his arrest remains the same. *Cf. Regalado v. Mgmt. & Training Corp.*, No. 22-10034, 2023 WL 142087, at *2 (5th Cir. Jan. 10, 2023) (*same pro se Plaintiff*) ("[A] district court need not provide litigants—even those proceeding *pro se*—multiple chances to amend, particularly where they fail to identify new facts they would allege nor attach a proposed amended complaint." (internal quotation marks and citations omitted)).

a showing of no probable cause." *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) (citations omitted). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 245 n.13 (1983).

To recover for unconstitutional arrest that has resulted in a conviction, a § 1983 plaintiff must show that the conviction underlying the unconstitutional arrest has been reversed, expunged, declared invalid, or called into question by a federal writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Lewis v. City of Waxahachie*, 465 F. App'x 383, 385 (5th Cir. 2012) (holding that a § 1983 claim for wrongful arrest does not accrue until the underlying conviction has been overturned, expunged, or otherwise invalidated). Thus, if a defendant is arrested on multiple charges, and "there was probable cause for any of the charges … then the *arrest* was supported by probable cause, and the claim for false arrest fails." *Buehler v. Dear*, 27 F.4th 969, 991 n.85 (citing *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) (emphasis in original)).

Plaintiff alleges that he was wrongfully arrested for possession of controlled substance due to his possession of cannabinoid Delta 8, which Plaintiff submits was legal in Texas at the time of arrest. (Dkt. No. 1-2 at 3, ¶6.1.) However, at the time of arrest, Plaintiff was also charged with two other criminal violations, possession of marijuana and criminal trespass, and arrested pursuant to a parole warrant. (*Id.*) Plaintiff was subsequently convicted of criminal trespass, pursuant to his arrest on December 7, 2021. *See* Dkt. No. 25-1, Ex. A. As made clear by Plaintiff, Plaintiff is arguing that although the police did have sufficient probable cause to arrest him for criminal trespass, the police lacked probable cause to arrest Plaintiff for possession of a controlled substance, a charge that was subsequently dismissed. (Dkt. No. 34 at 2, ¶1.1.) However, Plaintiff's claim fails because the *arrest* was supported by adequate probable cause, as evidenced by

11

Plaintiff's subsequent conviction of one of the charges underlying Plaintiff's arrest, criminal trespassing.

For sake of clarity, Plaintiff cannot challenge the existence of probable cause related to Plaintiff's arrest on December 7, 2021, since he was convicted of one of the three charges underlying his arrest. *See Wells*, 45 F.3d at 95; *see also Connors v. Graves*, 538 F.3d 373, 377-78 (5th Cir. 2008); *Heck*, 512 U.S. at 486-87. Simply put, the existence of probable cause to arrest is not offense specific; thus, if there is probable cause to arrest for one crime, the arrest is constitutional regardless of whether there was probable cause as to each underlying charge. Therefore, to have a valid claim, Plaintiff must show there was no probable cause for the *arrest*, i.e., show no probable cause as to *any of the underlying charges* at the time of arrest, which he cannot do unless his conviction is overturned, expunged, or otherwise invalidated.

Further, because the arrest ended in a conviction, Plaintiff cannot state a claim even under the standard outlined in Plaintiff's response, which requires "plaintiff ... to show that the criminal prosecution [pursuant to his arrest] ended without conviction." (Dkt. No. 28 at 3, ¶III(A)(3.1) (citing *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022)).) And, because of the conviction, Plaintiff can hardly claim that on the date of his arrest and detention, the officers "had no good reason to believe that criminal charges were justified by the facts and the law." (*Id.* at 5, ¶III(A)(3.1) (internal quotation marks and citations omitted).) As such, because the conviction underlying Plaintiff's arrest has not been overturned, expunged, or otherwise invalidated, his § 1983 claim should be dismissed. *See Wells*, 45 F.3d at 95; *see also Buehler*, 27 F.4th at 991 n.85.

### ii. Failure to Satisfy *Monell* Factors

Municipal liability under § 1983 "requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or

custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978) (hereinafter "the *Monell* factors")).   "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability. *Piotrowski*, 237 F.3d at 578 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984); *McKee v. City of Rockwell*, 877 F.2d 409, 415 (5th Cir. 1989)).

Because Plaintiff has not stated facts sufficient to give rise to a § 1983 constitutional claim for his arrest, there is no need to address whether the action was done pursuant to an official policy. However, if Plaintiff did state facts sufficient to give rise to a valid § 1983 claim, Plaintiff still fails to meet the requirements for municipal liability under *Monell*.  As Defendant argues, Plaintiff has no claim because a local government cannot be liable for constitutional violations of employees unless it is done through official policy by a policymaker.  (Dkt. No. 25 at 3-4.)  In Plaintiff's response, Plaintiff simply disagrees with this statement, without any accurate legal support, nor does Plaintiff point to an official policy or action that may implicate municipal liability.  (Dkt. No. 28 at 5, ¶III(A)(3.2).)  Specifically, Plaintiff argues that "the line between acting in a prosecutorial capacity and acting as a final policy maker is determined by the facts of each case."  (*Id*. at 4, ¶III(A)(3.1) (internal court citations omitted).)  Further, Plaintiff asserts that "even a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result."  (*Id*. at 6 (citations omitted).)

Nonetheless, Plaintiff's response does not identify an official policy that would satisfy the legal standard outlined under *Monell* to create municipal liability.  In fact, as previously noted, Plaintiff has failed to state any constitutional violation thus far, much less identified a policy,

13

innocuous or not, that caused a constitutional violation. (*See supra* ¶III(a)(i).) As such, Plaintiff has failed to satisfy the standard required to state a claim, so Plaintiff's claim should be dismissed.

## B. Conditions of Confinement

Plaintiff claims that the conditions he experienced while detained constituted cruel and unusual punishment giving rise to relief under § 1983. Specifically, Plaintiff alleges that he was denied mental health treatment multiple times despite requesting treatment (Dkt. Nos. 1-2 at 4, ¶6.2; 22 at 6, ¶4), that he was kept in a cold cell without blankets (Dkt. Nos. 1-2 at 4, ¶6.2; 22 at 6, ¶2), that he was fed nutritionally deficient food (Dkt. No. 22 at 6, ¶¶2, 5), and denied medical treatment until he had a seizure and became unconscious (*id.* at 4, ¶1). In response, the Defendant argues that Plaintiff has merely stated conclusory allegations and the allegations do not give rise to a claim of relief. (Dkt. No. 25 at 5.)

Plaintiff's § 1983 claim regarding the conditions of confinement fail for the same reasons as the previous claim – (i) Plaintiff has failed to state facts sufficiently showing a constitutional violation against the individual officers, and (ii) Plaintiff has failed to satisfy the *Monell* factors required for municipal liability. Each will be addressed in turn.

### i. No Constitutional Violation

"Pretrial detainees and convicted prisoners, … , look to different constitutional provisions for their respective rights to basic medical care and safety." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996). "The constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition against cruel and unusual punishment, … , and with relatively limited reach, from substantive due process." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Alternatively, "the constitutional rights of a pretrial detainee, … , flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Id.* (citing *Bell*

14

*v. Wolfish*, 441 U.S. 520 (1979)).  However, despite the distinction as to status and source of constitutional rights, "a pretrial detainee's due process rights are said to be 'at least as great as the Eight Amendment protections available to a convicted prisoner.'"  *Id.* (citing *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)).  Therefore, "[f]inding no constitutionally significant distinction between the rights of pretrial detainees and convicted inmate to basic human need, including medical care and protection from violence or suicide, we [Fifth Circuit] conclude that a state jail officials' liability to pretrial detainees for episodic acts or omissions should be measured by a standard of subjective deliberate indifference as enunciated by the Supreme Court in *Farmer*."  *Id.* at 643 (referencing *Farmer v. Brennan*, 511 U.S. 825 (1994)).

In Plaintiff's response to Defendant's motion to dismiss, Plaintiff takes issue with Defendant classifying him as a pre-trial detainee instead of a convicted prisoner.  (Dkt. No. 28 at 8, ¶3.5.)  However, the same standard is applied to both pretrial detainees and convicted prisoners when stating a claim of relief for unconstitutional conditions of confinement.  *Hare*, 74 F.3d at 639.  Thus, the distinction is irrelevant in assessing the merits of Plaintiff's claim.

Although the Constitution "does not mandate comfortable prisons*," Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), conditions of confinement cannot be inhumane.  *Farmer*, 511 U.S. at 832.  Regarding individual liability of officers, because officials are entitled to qualified immunity when acting in their official capacity, to overcome this immunity the plaintiff must show that the official acted with deliberate indifference towards the plaintiff's constitutional rights.  *Id.*  Thus, a plaintiff must show both a constitutional violation and facts showing that the officer acted with deliberate indifference regarding that constitutional right.  Deliberate indifference requires a prison official to know of and disregard an excessive risk to inmate health or safety.  *Farmer*, 511 U.S. at 837.  This requires the official to "both be aware of facts from which the inference could be

15

drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Thus, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838.

Plaintiff alleges constitutional violations by officials under three theories: (1) failure to provide adequate medical care, (2) failure to provide sufficient food, and (3) failure to provide a reasonably warm temperature in his cell. Each alleged unconstitutional condition of confinement will be addressed in turn below.

### 1. Medical Care

For medical care, a person's rights are violated where a prison official acts with deliberate indifference to a prisoner's serious medical needs. *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 754 (5th Cir. 2001) (citing *Estelle*, 429 U.S. at 105-06). This includes indifference manifested "by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05; *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to serious medical needs amounts to an Eighth Amendment violation only where those needs are 'serious.'" (citing *Estelle*, 429 U.S. at 103-04)). "[T]he essential test is one of medical necessity and not one simply of desirability." *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. 1981). "[A]n inadvertent failure to provide medical care" does not constitute acts or omissions "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106.

Plaintiff has failed to identify facts tending to show that the denial of psychiatric treatment is sufficient to meet the level of deliberate indifference required to state a claim of relief under §

16

1983. *Estelle*, 429 U.S. at 104-05. Plaintiff simply alleges a *desire* to receive psychiatric treatment but fails to state any facts showing psychiatric treatment was *necessary*. *See Woodall*, 648 F.2d at 272. Nor has Plaintiff stated any facts showing an intentional interference with any *serious* medical need. *Estelle*, 429 U.S. at 103-04. Plaintiff also fails to identify specifically what type of treatment was necessary or a specific diagnosis that required immediate treatment that was ignored by officials. To the contrary, Plaintiff states that he was given medical attention when he began showing physical signs of serious medical need, i.e., after he had a seizure and became unconscious. (Dkt. No. 22 at 4, ¶1.) Assuming those facts are true, the Defendant did not ignore Plaintiff's serious medical need; in fact, the officials provided medical treatment for Plaintiff's medical needs when the officials became aware of such necessity. Thus, officials did not act with deliberate indifference towards Plaintiff's serious medical needs, nor did officials interfere with access to such care. As such, Plaintiff has failed to state a constitutional claim based on the medical treatment provided while in custody and his claim should be dismissed.

### 2. Deprivation of Food

To state a § 1983 constitutional claim based on the conditions of confinement while in custody, plaintiff must allege nonconclusory factual support or harm showing a denial of basic life necessities. *See Johnson v. Texas Bd. of Crim. Justice*, 281 F. App'x 319, 321 (5th Cir. 2008). This requires showing that the conditions were objectively "so serious as to deprive prisoners of the minimal measure of life's necessities, as when it denies the prisoner some basic human need" and establish, "under a subjective standard," that "the responsible prison officials acted with deliberate indifference to his conditions of confinement." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999) (internal quotation marks, citations, and footnotes omitted).

17

The deprivation of food is only considered unconstitutional where the prison denies food to the extent that it falls below the minimal civilized measure of life's necessities. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation. *Compare Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (missing one out of every nine meals is not sufficient to show denial of minimal measure of life's necessities, reasoning that it "is hardly more than that missed by many working citizens over the same period"), *and Green v. Ferrell*, 801 F.2d 765, 770-71 (5th Cir. 1986) (serving only two meals a day is constitutional where none of the prisoners had medical problems as a result of being served only two meals and the mere fact that experts recommend three meals a day does "not create constitutional standards under the Eighth Amendment."), *with Cooper v. Sheriff, Lubbock Cty., Texas*, 929 F.2d 1078, 1084 (5th Cir. 1991) (continuous denial of all food for twelve consecutive days is enough to give rise to the possibility of relief as "[t]his circuit has long held that state prisoners are entitled to reasonably adequate food." (citations omitted)).

Plaintiff's conclusory allegation that he was given "nutritionally deficient food," without more, is not enough to give rise to relief. (Dkt. No. 22 at 6, ¶ 2.) Simply being fed nutritionally deficient food "is hardly more than that missed by working citizens." *Talib*, 138 F.3d at 214 n.3. Because Plaintiff has not alleged any facts showing a continuous or substantial denial of food, or any physical symptoms caused by said deficient food, Plaintiff has failed to allege facts sufficient to state a constitutional claim based on the food provided to Plaintiff during his detention. *Talib*, 138 F.3d at 214 n.3. And, because Plaintiff has not alleged any facts showing a constitutional deprivation, he cannot allege that officers acted with deliberate indifference in violating Plaintiff's constitutional rights. As such, Plaintiff has failed to state a constitutional claim based on the food provided while in custody and his claim should be dismissed.

18

### 3. Cold Temperatures

For cold temperatures to give rise to constitutional violation, plaintiff must show that the cold conditions were sufficiently serious in that they were denied "the minimal civilized measure of life's necessities." *Johnson*, 281 F. App'x at 321 (holding there was not a viable claim for being held in extreme heat where plaintiff alleged the temperatures were uncomfortably hot but failed to allege any heat-related injuries); *Porter v. Werner*, No. 1:16CV69-RHW, 2017 WL 599418, at *3 (S.D. Miss. Feb. 14, 2017) ("Plaintiff's conclusory assertions that the temperatures were "ice cold" or "real cold" [when held in a jail cell for approximately 8 hours during month of August in Mississippi] do not rise to the level of severity needed to state an unconstitutional condition of confinement"); *Young v. McCain*, 760 F. App'x 251, 257 (5th Cir. 2019) (finding no Eighth Amendment violation where prisoner alleged that "he was sentenced to 'strip cell/isolation,' that he was deprived of a mattress, sheets, and blankets for 60 days, and that in the fall and winter of 2015 he was given only 'a very very light fabric material,' two undershirts, and two pairs of socks, and was not provided a mattress and bedding between 5:30 a.m. and 8:30 p.m. each day.").

Cold conditions typically do not rise to the level of a constitutional violation, however, when in combination with other conditions that have a mutually reenforcing effect of producing a deprivation of an indefinable human need, it may be a factor giving rise to unconstitutional conditions. *See Palmer v. Johnson*, 193 F.3d 346, 353 (5th Cir. 1999) ("We find that the totality of the specific circumstances presented by [Plaintiff's] claim—his overnight outdoor confinement with no shelter, jacket, blanket, or source of heat as the temperature dropped and the wind blew along with the total lack of bathroom facilities for forty-nine inmates sharing a small bounded area—constituted a denial of the minimal civilized measure of life's necessities." (internal quotation marks and citation omitted)); *Alex v. Stalder*, 225 F. App'x 313, 314 (5th Cir. 2007)

19

(holding that prisoner's allegations that "he was held in very cold conditions, for an extended period in November and December, wearing nothing but a paper gown during the daytime, and that he was ordered to remain on the cold concrete whenever he attempted to sleep on the warmer, metal bunk" set forth a "nonfrivolous Eighth Amendment contention"); *Foulds v. Corley*, 833 F.2d 52, 54 (5th Cir. 1987) (noting that if proven, conditions of solitary confinement where inmate alleged he was forced to sleep on floor with rats crawling on him in extremely cold temperatures "would contravene the eighth amendment"); *Bienvenu v. Beauregard Parish Police Jury*, 705 F.2d 1457, 1460 (5th Cir. 1983) (noting that state pretrial detainee's statements that he was "intentionally subjected … to a cold, rainy, roach infested facility with inoperative, scum-encrusted washing and toilet facilities sufficiently alleges a cause of action cognizable under 42 U.S.C. § 1983 and the eighth and fourteenth amendments." (citations omitted)).

As such, Plaintiff's conclusory allegation that he "was kept in a cold cell with no blankets" is not enough to state a claim. (Dkt. No 22 at 6, ¶2.)  Importantly, Plaintiff's allegations do not identify facts tending to show that the temperatures were so cold that it constituted a denial of the "minimal civilized measure of life's necessities." *Johnson*, 281 F. App'x at 321.  The fact that Plaintiff was uncomfortable in the temperature of his cell, without more, is not enough to give rise to a constitutional claim. *Porter*, 2017 WL 599418, at *3.  Further, because Plaintiff has failed to allege facts sufficient to show a constitutional violation, there is no evidence that the officers acted with deliberate indifference regarding Plaintiff's constitutional rights.

For the reasons stated above, none of the facts stated in Plaintiff's complaint, even when believed to be true, rise to the level required to state a constitutional claim under § 1983 and Plaintiff's claims should be dismissed.

20

ii. Failure to Satisfy *Monell* Factors

Plaintiff's claims under § 1983 regarding the constitutionality of the conditions of confinement against the City of Edinburg requires dismissal because Plaintiff has failed to state facts implicating municipal liability. As outlined above, municipal liability under § 1983 requires proof of three elements: a policymaker, an official policy, and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski*, 237 F.3d at 578 (citing *Monell*, 436 U.S. at 694). "[I]solated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578 (citations omitted). Thus, to find liability, Plaintiff must allege a constitutional deprivation caused by an official policy or custom implemented by the municipality. *Id.* Where an official policy or practice is unconstitutional on its face, it is assumed that a policymaker was not only aware of the specific policy but was also aware that a constitutional violation will most likely occur. *See id.* at 579. However, where an alleged policy or custom is facially innocuous, the plaintiff must establish the requisite knowledge – i.e., the official policy was "promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Id.*

Plaintiff argues that a municipality can be held liable where a "facially innocuous policy" is "promulgated with deliberate indifference to the known or obvious consequences that constitutional violations will result." (Dkt. No. 28 at 5-6, ¶3.2 (citations omitted).) In support, Plaintiff alleges that "no prudent person could reason that denying or delaying medical attention to a person with obvious signs of medical and mental distress is acceptable in a society." (*Id.* at 5, ¶3.2.) However, Plaintiff fails to point to a "facially innocuous policy," much less any facts showing that a policy was enacted with deliberate indifference towards a constitutional right. Rather, Plaintiff alleges that the officers of the jail routinely carrying out the "unconstitutional

21

practice" surrounding his medical treatment constitutes a "policy" under *Monell* standards because the treatment is consistently repeated.  (Dkt. No. 28 at 5-6, ¶3.2.)  However, Plaintiff fails to identify any unconstitutional practice routinely carried out by officials.  The routine medical treatment outlined by Plaintiff is constitutional, as explained above. *See supra* ¶III(B)(i)(1).  Thus, even assuming routine acts by officers is considered a "policy" under *Monell*, Plaintiff has not stated sufficient facts showing that the practice caused a constitutional violation, or that it was implemented with deliberate indifference towards any constitutional right.  And, for the same reason, Plaintiff's claims regarding the food provided and the temperature of his cell also fail. *See also Martinez v. City of North Richland Hills*, 846 F. App'x 238, 247 (5th Cir. 2021) (dismissing complaint under *Monell* since complaint did  "not contain any specific City policy" or "plead any facts that would permit the conclusion that the unidentified custom or policy was the 'moving force' behind the detention officers' alleged misconduct.").

Therefore, Plaintiff has not alleged facts sufficient to state a claim for municipal liability and the claim still requires dismissal.

**C.      Excessive Bail and Failure to Provide Counsel**

Plaintiff asserts an Eighth Amendment violation based on excessive bail set by the municipal judge, as well as a Sixth Amendment violation based on the alleged failure to appoint counsel for Plaintiff during arraignment.  (Dkt. No. 1-2 at 4-5, ¶¶6.3, 6.4.)  Defendant responds that Plaintiff does not have a claim because the municipal judge is entitled to judicial immunity and actions taken in a judge's official capacity are not redressable constitutional torts. (Dkt. No. 25 at 6.)

Plaintiff's claims fail for two primary reasons – (i) Judge Bustos is entitled to absolute immunity, barring all claims against Judge Bustos in his official and individual capacity, and (ii)

Plaintiff has failed to identify a policy or policymaker behind either constitutional violation, barring municipal liability. Finally, Plaintiff's Sixth Amendment claim also fails for a third reason, Plaintiff has failed to allege facts sufficient to show a constitutional violation. Each of said shortcomings will be addressed in turn.

### i. Judicial Immunity

"It is well settled that judicial officers are entitled to absolute immunity from claims for damages arising out of acts performed in the exercise of their judicial discretion." *Unger v. Taylor*, No. 6:06-CV-466, 2007 WL 9711406, at *18 (E.D. Tex. Sept. 18, 2007), *report and rec. adopted*, No. 6:06-CV-466, 2008 WL 11422152 (E.D. Tex. Feb. 1, 2008), *aff'd*, 368 F. App'x 526 (5th Cir. 2006) (citing *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994)). "The alleged magnitude of the judge's errors or the mendacity of his actions is irrelevant." *Boyd*, 31 F.3d at 284 (citing *Young v. Biggers*, 938 F.2d 565, 569 n.5 (5th Cir. 1991)). Judicial immunity "protects the judge against liability for all but non-judicial acts." *Arsenaux v. Roberts*, 726 F.2d 1022, 1023 (5th Cir. 1982). In determining whether an act is judicial or non-judicial, four factors are considered: "(1) whether it is a function normally performed by the judge, (2) whether the acts occurred in the courtroom or adjunct space such as the judge's chambers, (3) whether the controversy centered around a case pending before the court, and (4) whether the parties dealt with the judge in his official judicial capacity." *Unger*, 2007 WL 9711406, at *19 (citing *Malina v. Gonzalez*, 994 F.2d 1121, 1124 (5th Cir. 1994)).

In this matter, Plaintiff complains of conduct occurring when he was presented before Judge Bustos during Plaintiff's initial appearance. During this hearing, bond was set and Plaintiff was informed of the nature of his charges. There are no facts stated by Plaintiff suggesting that this hearing was not judicial in nature or carried out in absence of Judge Bustos' judicial capacity

23

or jurisdiction.  Importantly, the setting of bond is clearly within the judicial role of Judge Bustos, the conduct occurred in the courtroom, and the allegations are centered around a case pending before the court.  Based on these facts and circumstances, the only conclusion is that the hearing was carried out pursuant to Judge Bustos' judicial capacity.  *Unger*, 2007 WL 9711406, at \*19 (citing *Malina*, 994 F.2d at 1124).  Therefore, Judge Bustos is entitled to judicial immunity as to Plaintiff's excessive bail claim in both his official and individual capacity.  *Deleon v. City of Haltom City*, 106 F. App'x 909, 912 (5th Cir. 2004) (noting that the municipal judge's actions were "judicial in nature" and said judge is protected "from liability by absolute judicial immunity"); *Jewell v. Bartlett*, No. 3:19-cv-2667-N-BT, 2022 WL 1129910, at \*4 (N.D. Tex. Mar. 14, 2022), *report and rec. adopted*, No. 3:19-CV-02667-N (BT), 2022 WL 1128957 (N.D. Tex. Apr. 15, 2022) ("The setting of bond is a quintessential judicial function deserving of judicial immunity, so absolute judicial immunity bars any claim against [the judge] in his individual capacity." (citing *Walczyk v. Rio*, 496 F.3d 139, 165 (2d Cir. 2007))).  For the same reason, Judge Bustos is also protected by judicial immunity for any allegations related to the failure to appoint counsel at Plaintiff's initial appearance.  *Deleon*, 106 F. App'x at 912.  As such, both claims against Judge Bustos are barred by judicial immunity.

### ii.  Failure to Satisfy *Monell* Factors

Plaintiff asserts that the City of Edinburg is liable for the municipal judge's violation of his constitutional right to counsel.  (Dkt. No. 1-2 at 5, ¶6.4.)  However, the Fifth Circuit has "repeatedly rejected" recognizing a municipal judge as a policymaker or that their decisions constitute municipal policy giving rise to municipal liability.  *Cunningham ex rel Cunningham v. City of W. Point Miss.*, 380 F. App'x. 419, 421 (5th Cir. 2010) ("A local judge acting in his or her judicial capacity is not considered a local government official whose actions are attributable to the

county." (quoting *Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995))); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) ("[A] municipal judge acting in her or her judicial capacity to enforce state law does not act as a municipal official or lawmaker."); *see also Scott v. Pyles*, 596 F. Supp. 3d 623, 632 (S.D. Miss. 2022) (same).   Only actions taken pursuant to a judge's administrative role can be said to be a "municipal policy" under *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), and *Monell*.  *Johnson*, 958 F.2d at 94.

Here, the alleged constitutional violations occurring under Judge Bustos, were carried out while Judge Bustos was acting in his official capacity, *not* his administrative capacity, and Plaintiff has not alleged facts showing otherwise. Thus, Judge Bustos' acts, as alleged by Plaintiff, do not constitute a "policy", and do not give rise to municipal liability under § 1983. All of Plaintiff's § 1983 claims against the city for the alleged acts taken by Judge Bustos must be dismissed.

### iii.  No Constitutional Violation Under the Sixth Amendment

Even if Plaintiff could overcome the previously outlined deficiencies with regard to his Sixth Amendment claim, Plaintiff's Sixth Amendment claim still requires dismissal because Plaintiff has not shown that the delay in appointing counsel was unreasonable or that he suffered any prejudice from the delay.

Under Texas law, within 48 hours an arrestee is taken before a judge to inform them of their charges, of their rights, determine bond, and determine whether the person requires an appointment of counsel. *See* Tex. Code Crim. Pro. Ann. art. 15.17. "Once the adversary process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical stages' of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (citing *United States v. Wade*, 388 U.S. 218, 227-28 (1967); *Powell v. Alabama*, 287 U.S. 45, 57 (1932)).   "[A] criminal defendant's initial appearance before a judicial officer, where he learns

25

the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger the attachment of the Sixth Amendment right to counsel." *Rothgery v. Gillespie Cty.*, 554 U.S. 191, 213 (2008). That does not, however, mean that a criminal defendant is entitled to counsel as soon as the Sixth Amendment right attaches. *See id.* at 213–14 (Alito, J., concurring) ("[T]he term 'attachment' signifies nothing more than the beginning of the defendant's prosecution. It does not mark the beginning of a substantive entitlement to the assistance of counsel."). Rather, "[o]nce attachment occurs, the accused at least is entitled to the presence of appointed counsel during any 'critical stage' of the post-attachment proceedings." *Id.* at 212. "The US Supreme Court has held that the right to counsel attaches, for Sixth Amendment purposes, when a defendant appears for an Article 15.17 hearing." *Bolivar v. Davis*, No. 1:18-cv-139, 2019 WL 7593279, at *12 (S.D. Tex. Oct. 23, 2019) (citing *Rothgery*, 554 U.S. at 213); *see also Kennedy v. Bexar Cty., Tex.*, No. CVSA16CA262XR, 2016 WL 1715200, at *2 (W.D. Tex. Apr. 27, 2016) (same).

To be clear, "counsel must be appointed *within a reasonable time after attachment* to allow for adequate representation at any critical stage before trial, as well as trial itself." *Rothgery*, 554 U.S. at 212 (emphasis added). Thus, Plaintiff must show that counsel was not appointed within a reasonable time after his initial appearance to state a claim under the Sixth Amendment. *See Ransdell v. Lumpkin*, No. CV SA-21-CA-0010-XR, 2021 WL 4392084, at *4 (W.D. Tex. Sept. 23, 2021) ("[C]ontrary to Petitioner's assertions, nothing in *Rothgery* requires the appointment of an attorney prior to an Article 15.17 hearing or the physical presence of one during the article 15.17 hearing." (citing *Rothgery*, 554 U.S. at 212)); *Mortland v. Hays Cty. Cmty. Supervision & Corr. Dep't*, No. A-12-CA-488-SS, 2013 WL 1455657, at *3 (W.D. Tex. Apr. 8, 2013) (noting that "*Rothgery* held only that the Sixth Amendment right to counsel attaches at such an [initial]

appearance and that counsel must be appointed (or the defendant must be given the opportunity to retain counsel) within a reasonable time *thereafter*." (emphasis original)).

Plaintiff takes issue with the fact that he was not appointed counsel at his "arraignment", presumably the article 15.17 hearing, where Plaintiff's bail was initially set, and he was informed of the nature of his charges.  (Dkt. No. 1-2 at 5, ¶ 6.4.)  Plaintiff alleges no other time during the criminal proceedings where he was denied counsel, nor has Plaintiff alleged any facts tending to show that counsel was not appointed within a reasonable time after the article 15.17 hearing.  As such, for the noted reasons, Plaintiff has failed to state facts alleging a colorable claim under the Sixth Amendment and his claim should be dismissed.[7]

## D.    Negligent Training

Plaintiff alleges that the Defendant negligently trained its officers or agents which resulted in a violation of his constitutional rights, as alleged in the complaint.  (Dkt. No. 22 at 6.)  Primarily, Plaintiff's argument is based on the alleged constitutional violations regarding the previously addressed conditions of confinement during Plaintiff's detention.   (Dkt. Nos. 1-2, 22, 28.)

---

[7] *Booth v. Galveston County* opined that a 15.17 initial hearing could be considered a critical stage where counsel is required if bail is set at that time.  *Booth v. Galveston Cty.*, No. 3:18-CV-00104, 2019 WL 3714455, at *16 (S.D. Tex. Aug. 7, 2019), *report and rec. adopted as modified*, No. 3:18-CV-00104, 2019 WL 4305457 (S.D. Tex. Sept. 11, 2019).  *Booth* recognized the precedent holding that a 15.17 hearing is not a critical stage that requires the appointment of counsel because just 12 hours after the 15.17 hearing, a bail review hearing is conducted with counsel present.  *Id.* at *15.  It appears that *Booth* sparked debate regarding whether the bail review hearing is sufficient to remedy the failure to provide counsel at the initial 15.17 hearing, where bail is typically set.  The court in *Booth* subsequently disagreed with precedent holding that counsel is not necessary at an Article 15.17 hearing and argued that those cases were distinguishable from *Booth* because they did not "discuss the right to counsel at hearing where bail was set, but rather generally discuss the proprietary of having a lawyer appointed at an initial appearance."  *Id.*  In the adopted report and recommendation, the district court held that "Galveston County must provide any indigent felony arrestee with counsel to represent the arrestee at the initial hearing concerning conditions of pretrial release... [but] [t]his does not apply to municipal magistrations conducted outside of Galveston County jail, or to warrant arrests."  *Booth v. Galveston Cty.*, No. 3:18-CV-00104, 2019 WL 4305457, at *2 (S.D. Tex. Sept. 11, 2019).  *Booth* is currently pending appeal to the Fifth Circuit.  While Plaintiff may attempt to rely on *Booth*, it is not controlling precedent and, as noted, the undersigned, based on noted citations and Supreme Court precedent, concludes that right to counsel "attaches" at Article 15.17 hearing but counsel is not required to be present.

Defendant alleges that Plaintiff has failed to state a claim because Plaintiff has not stated facts sufficient to satisfy any of the elements required for recovery under a "failure to train or supervise" theory. (Dkt. No. 25 at 7-8.)

"A supervisor may be liable for failure to supervise or train if [the plaintiff establishes]: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link between the failure to train or supervise and the violation of plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference" of plaintiff's constitutional rights. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (internal quotation marks and citation omitted); *see also Pena v. Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (same). To establish deliberate indifference under a failure to train theory a plaintiff must show "that a particular omission in [a state actor's] training program causes ... employees to violate citizens' constitutional rights and the actor nonetheless chooses to retain that program." *Porter*, 659 F.3d at 447 (internal quotation marks and citations omitted). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." *Bd. of the County Comm'rs of Bryan Cty., Ok., v. Brown*, 520 U.S. 397, 410 (1997). Furthermore, "[b]ecause the 'standard for [municipal] fault' is a 'stringent one', '[a] pattern of similar constitutional violations of untrained employees is ordinarily' required to show deliberate indifference." *Pena*, 879 F.3d at 623 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). "[A] plaintiff must do more than describe the incident that gave rise to his injury." *Pena*, 879 F.3d at 622. "[W]hen officers have received training required by Texas law, the plaintiff must show that the legal minimum of training was inadequate." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381-82 (5th Cir. 2010) (citing *Benavides v. Cty. of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992)).

While Plaintiff alleges specific conduct underlying the nature of his confinement, Plaintiff

fails to identify any inadequate training or supervision, or lack thereof, as the cause of any

unconstitutional conditions or treatment. *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th

Cir. 2005) ("for liability to attach based on an 'inadequate training' claim, a plaintiff must allege

with specificity how a particular training program is defective" (citing *Benavides*, 955 F.2d at

973)). Rather, Plaintiff asserts the conclusory allegation that "Defendant negligently trained their

officers, employees, agents, or contractors in regard to the claims made in this Complaint" without

alleging any facts showing how the Defendant's negligent or defective training practices are

related to the allegations in the Complaint. (Dkt. No. 22 at 6, ¶6); *see also Iqbal*, 556 U.S. at 662

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

allegations, will not suffice" to overcome a motion to dismiss). Because Plaintiff has not identified

a defective training program or a pattern of unconstitutional conduct from deficiently trained

employees his claim must be dismissed.

### E.   Intentional Infliction of Emotional Distress

Plaintiff alleges that the City of Edinburg is liable for intentional infliction of emotional

distress due to the jail facility denying him psychiatric treatment while in custody. (Dkt. No. 22

at 6, ¶4.)   Defendant responds that Plaintiff has failed to state factual allegations supporting a

claim because under the Texas Tort Claims Act (TTCA) governmental immunity bars any

intentional tort claims against governmental units. (Dkt. No. 25, at 8-9.)

"In Texas, a governmental unit can only be held liable for tortious actions of its agents and

employees to the extent that its sovereign immunity is waived by the Texas Tort Claims Act

[TTCA], Tex. Civ. Prac. & Rem. Code Ann. § 101 et seq." *Goins v. City of Houston*, 2021 WL

2785344, at *8 (S.D. Tex. June 8, 2021), *report and rec. adopted*, No. 4:20-cv-1553, 2021 WL

29

2779312 (S.D. Tex. July 2, 2021). As such, the doctrine of governmental immunity from suit bars litigation against a city as a governmental unit[8] unless the state waives immunity by constitutional law or by statute. *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 353 (Tex. 2013); *see also Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016). A plaintiff has the burden of "alleging a valid waiver of immunity" for the court to have subject-matter jurisdiction over state-law claims brought against a governmental unit. *Robison v. CNA Ins. Co.*, No. 1:17-cv-508, 2018 WL 10604116, at *6 (E.D. Tex. May 9, 2018) (quoting *Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 927 (Tex. 2015)); *see also Chavez v. Alvarado*, 550 F. Supp. 3d 439, 453 (S.D. Tex. 2021).

There are three areas of liability that have been waived under the TTCA. These include, injuries caused by "an employee's use of a motor-driven vehicle", "a condition or use of tangible or real property", and "from premise defects." *Goins*, 2021 WL 2785344, at *8 (citing Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021, 101.022); *see also Sampson*, 500 S.W.3d at 384. The denial of medical and psychiatric attention on December 7-8, 2021, as alleged by Plaintiff clearly does not fit within any of these categories.

Furthermore, "the Tort Claims Act's waiver of immunity expressly excludes intentional torts such as assault and battery and intentional infliction of emotional distress." *Kesler v. King*, 29 F. Supp. 2d 356, 376 (S.D. Tex. 1998) (citing Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2)); *see also Goins*, 2021 WL 2785344, at *8 ("[I]ntentional torts, as is at issue with [plaintiff's] intentional infliction of emotional distress claims, expressly fall outside of Texas' governmental immunity waivers."). Thus, Plaintiff's claim against the Defendant alleging intentional infliction

---

[8] A governmental unit is defined as "a political subdivision of the state, including any city, county, school district, …" Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(B).

of emotional distress should be dismissed as state governmental immunity has not been waived

regarding said claim.

F.   **Conspiracy**

For sake of clarity, all of Plaintiff's conspiracy claims, including the claims made in his

second and third amended petition, will be addressed here.   Plaintiff alleges conspiracy claims

under both § 1983 and § 1985 of title 42.   Under § 1983, Plaintiff alleges that "City of Edinburg

Police Department Officers and Judges who were involved in [the] investigation of the possession

of controlled substance… charge against [Plaintiff]… conspired against [Plaintiff] to violate [his]

constitutional right to be free from illegal seizure of [his] personal property… and unlawful arrest."

(Dkt. No. 22 at 6, ¶3.)   In Plaintiff's third amended complaint, and still under § 1983, Plaintiff

alleges that "John Doe #2 and John Doe #3 [the jailers] conspired against Plaintiff to wrongfully

charge him with possession of controlled substance, to delay medical attention, and when medical

attention was actually provided, John Doe #3 conspired with Urgent Care workers to deny Plaintiff

'adequate' medical attention."   (Dkt. No. 31 at 11, ¶1.7.)

Then, in Plaintiff's third amended complaint, Plaintiff adds a conspiracy claim under §

1985(3) against two jailers, hereafter "John Does #2 and #3", and presiding judge, Hector Bustos.

(Dkt. No. 31 at 11, ¶1.8.)   In support, Plaintiff alleges that Judge Bustos and John Does #2 and #3

conspired to deprive Plaintiff of reasonable bail and wrongful imprisonment.   (*Id.*)

Defendant argues that Plaintiff's conspiracy claims fail because the factual allegations are

conclusory and governmental employees acting in their official capacity cannot conspire with each

other.   (Dkt. No. 25 at 9.)   Further, Defendant argues that immunity bars all conspiracy claims

against the named judges.   (Dkt. No. 38 at 2-3, ¶3.)   Finally, Defendant argues that the conspiracy

claims against the other named parties are conclusory and insufficient to state a claim.  (*Id.* at 3-4, ¶4.)

As further explained below, Plaintiff's § 1983 conspiracy claims fail because Plaintiff fails to state nonconclusory facts showing an agreement between the conspirators with the objective to violate Plaintiff's constitutional rights.  Similarly, Plaintiff's § 1985 conspiracy claim fails because Plaintiff does not state facts showing racial animus as a moving force behind the conspiracy.  And, because all parties are acting as members of a governmental entity, the failure to show that the parties were acting outside of their official role during the conspiracy is fatal to Plaintiff's claim.

   i. <u>§ 1983 Conspiracy</u>

"Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based.  Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir.1987) (footnote omitted).  Importantly, a plaintiff must allege facts that "establish 1) the existence of a conspiracy involving state action" as well as "2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449 (5th Cir. 1992)).  Further, plaintiff must show that there was an agreement among the alleged co-conspirators to deprive him of his constitutional rights and that such an alleged deprivation occurred.  *See Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994); *Estate of Farrar v. Cain*, 941 F.2d 1311, 1313 (5th Cir. 1991).  Thus, plaintiff must identify specific facts showing the existence of an agreement between the parties to the conspiracy.  *See Arsenaux*, 726 F.2d at 1023–24.

32

Plaintiff alleges three conspiracies under § 1983: (1) between the judges and the arresting officers involved in his case, (2) between John Does #2 and #3 (the jailers), and (3) between John Doe #3 and an Urgent Care employee. The validity of each will be addressed below.

### 1. Conspiracy Between Judges and Officers

Plaintiff has failed to state any specific nonconclusory facts showing an agreement between Edinburg Police Officers and the Judge involved in his case. Instead, without specifically identifying any person, Plaintiff states, in a conclusory fashion, that the Edinburg Police Department and Judges involved in his case "conspired to violate [his] constitutional right to be free from illegal seizure... and unlawful arrest." (Dkt. No. 22 at 6, ¶3.) Plaintiff does not identify any communication between the parties of the "conspiracy", nor does Plaintiff provide an identifiable common motive, plan, or scheme. *See Montgomery v. Walton*, 759 F. App'x 312, 314-15 (5th Cir. 2019) (holding that plaintiff failed to state facts sufficient to state a claim of conspiracy under § 1983 where plaintiff failed to identify a time, date, or circumstance surrounding an agreement between conspirators nor a common motive other than wanting plaintiff imprisoned); *Jabary v. City of Allen*, 547 F. App'x 600, 611 (5th Cir. 2013) (holding that plaintiff failed to state a claim for conspiracy where plaintiff alleged that local officials "actively conspired with each other" and engaged in "several conversations, private meetings, and other communications" to deprive plaintiff of his civil rights since said statements are "conclusory in nature"). As such, Plaintiff has failed to state a claim of conspiracy between "the officers and judges on his case", and the claim should be dismissed.

### 2. Conspiracy Between John Does #2 and #3

Next, Plaintiff alleges that John Does #2 and #3 conspired against him while he was in isolation. (Dkt. Nos. 27 at 3-5, ¶¶1.5, 1.6; 31 at 11, ¶1.7.) In support, Plaintiff claims John Doe

#2 and #3 told Plaintiff that "if he did not 'behave', he would get more charges, which is ultimately what happened." (Dkt. Nos. 27 at ¶1.6; 31 at 11, ¶1.7.) The "wrongful charges" Plaintiff is referring to is possession of a controlled substance, a felony offense. (Dkt. No. 31 at 11, ¶1.7.) Based on the facts stated, John Does #2 and #3 were the jailers monitoring Plaintiff in his cell. Importantly, Plaintiff omits that he was already charged with possession of a controlled substance when he was arrested, i.e., before the comments were made by the John Doe officers. (Dkt. No. 1-2 at 2-3, ¶5.1.) Further, there is no claim or allegation indicating that John Does #2 and #3, had any involvement, communication, or connection to any of the charges brought against Plaintiff or the officer who arrested and charged Plaintiff with the possession of controlled substance offense. As such, Plaintiff has failed to state facts indicating any known communication, agreement, or common unconstitutional motive between John Does #2 and #3. *Montgomery*, 759 F. App'x at 314-15; *Jabary*, 547 F. App'x at 611.

Even if Plaintiff could show an agreement between the parties, his claim still fails because he has failed to allege any constitutional violation as the object of the conspiracy or resulting from the conspiracy. *See Jackson v. City of Hearne, Texas*, 959 F.3d 194, 206 (5th Cir. 2020) ("[defendant] cannot be held liable for participation in a conspiracy that failed to violate any of the plaintiff's rights."). Plaintiff has not identified any additional or otherwise unconstitutional charges brought after the officers made the allegedly threatening statements. While certainly unprofessional, merely making threatening statements to an inmate is not a constitutional violation. *See Laborde v. Lowe*, 2011 WL 336460, at *6, *aff'd*, 471 F. App'x 390 (5th Cir. 2012) (citing *Bender v. Brumley*, 1 F.3d 271, 274 n.3 (5th Cir. 1993); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) ("Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations.")). Thus, even assuming John Does #2 and #3 conspired to

34

make threatening statements to Plaintiff, that is not sufficient to establish a constitutional violation as the motive of the agreement. *See Shaw*, 918 F.3d at 419 ("No deprivation, no § 1983 conspiracy."); *Laborde*, 2011 WL 336460, at *6. As such, Plaintiff has failed to state a claim of conspiracy under § 1983 between John Does #2 and #3 and Plaintiff's claim should be dismissed.

### 3. Conspiracy Between John Doe #3 and an Urgent Care Employee

Finally, in Plaintiff's third amended complaint, he alleges John Doe #3 and an urgent care worker conspired to deprive him of adequate medical treatment. (Dkt. No. 31 at 11, ¶1.7.) In support, Plaintiff states that John Doe #3 "specifically told employees at the Urgent Care clinic that he needed them to 'clear' Plaintiff so he could 'take him back' to the City Jail." (*Id.*) Like the previous conspiracy allegations, Plaintiff has failed to identify any agreement, plan, or motive amongst the parties with the objective of violating Plaintiff's constitutional rights. *Montgomery*, 759 F. App'x at 314-15; *Jabary*, 547 F. App'x at 611. The conversation outlined by Plaintiff does not evidence any agreement between John Doe #3 and the Urgent Care employee to violate Plaintiff's constitutional rights. Rather, if anything, it indicates a comment regarding Plaintiff's treatment timeline by John Doe #3. Furthermore, there are no facts, assuming the allegations as presented by Plaintiff are true, showing unconstitutional care was provided to Plaintiff after the statement was made. *See Montgomery*, 759 F. App'x at 314-15; *Jackson*, 959 F.3d at 206; *see also Pea v. Edwards*, No. CIV.A. 14-1764, 2015 WL 4661646, at *15 (E.D. La. Aug. 5, 2015) (disagreement with the quality of medical care does not amount to a constitutional violation); *Williams v. Browning*, No. V–03–157, 2006 WL 83433, at *3 (S.D. Tex. Jan. 11, 2006) (delay in medical treatment does not rise to the level of a constitutional violation). As such, Plaintiff has failed to state a claim of conspiracy against the Urgent Care employee and John Doe #3.

ii. § 1985 Conspiracy

Section 1985(3) prohibits a conspiracy "for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws." 42 U.S.C. § 1985. To prevail on a § 1985(3) claim, one must prove " (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Oliver v. Prator*, 438 F. Supp. 2d 676, 679 (W.D. La. 2006)  (citing *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003) (quoting *United Broth. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983))). Moreover, "[t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Bright v. City of Killeen, Texas*, 532 F. Supp. 3d 389, 401 (W.D. Tex. 2021).

In previous § 1985 conspiracy claims, the Fifth Circuit has held that "[b]ecause a unit of government and its employees are deemed to constitute a single legal entity, governmental entities and their employees cannot conspire among themselves." *Jackson v. Signh*, No. Civ. A. No. H–06–2920, 2007 WL 2818322, at *11 (S.D. Tex. Sept. 25, 2007) (citing *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998)); *see also Britt v. Jackson Cty., Miss*., No. 1:11–cv–00074–HSO–JMR, 2012 WL 2460534, at *8 (S.D. Miss. June 27, 2012) (holding that a county and its officials, agents, and employees constitute a single legal entity, which cannot conspire with itself).

36

Plaintiff alleges that John Does #2 and #3, and Judge Bustos are liable under § 1985 because they conspired to deny Plaintiff reasonable bail and wrongfully charge him with a crime. (Dkt. No. 31 at 11, ¶1.8.)  First, Plaintiff's claim under § 1985 fails because Plaintiff provides no factual allegations showing that either of these "conspiracies" were racially motivated, nor does he identify any agreement between the parties that was motivated by racial animus. *Griffin*, 403 U.S. at 102; *Bright*, 532 F. Supp. 3d at 401.  In fact, Plaintiff does not state any facts evidencing an agreement or communication between the parties to the conspiracy, namely John Does #2 and #3 and Judge Bustos.

Assuming *arguendo*, Plaintiff provides no facts alleging the parties were acting outside of their official roles as government employees during the conspiracy.  Plaintiff alleges that the goal of the conspiracy was his arrest and/or violation of his Fourth Amendment right, which could only be carried out by the Defendants when acting in their official capacity as either officers or judges. As such, because the Defendant, City of Edinburg Police Officers, and its judges, were acting in their official capacity, the parties are considered one single governmental entity and cannot conspire with each other. *Signh*, 2007 WL 2818322, at *11 (citations omitted).  Without factual allegations sufficient to show otherwise, there can be no conspiracy amongst the parties stated.  Thus, Plaintiff has failed to state a claim for conspiracy and his claim must be dismissed.

## IV.    SECOND AND THIRD MOTIONS TO SUPPLEMENT AMENDED COMPLAINT[9]

In Plaintiff's first motion to amend or supplement his amended complaint, he adds additional facts and claims.  *See generally* Dkt. No. 27.  In response, Defendant argues that

---

[9] As noted previously, the undersigned will only address Plaintiffs Fourth Amended Complaint (Dkt. No. 42) to the extent it may be relevant to the legal conclusions addressed herein.  The undersigned once again notes that Plaintiff's Fourth Amended Complaint did not contain any additional facts or legal arguments that would prevent the dismissal of Plaintiff's Complaint or alter the legal analysis contained in this report and recommendation.

Plaintiff's request to amend should be denied as untimely, prejudicial, unnecessary, and futile. *See generally* Dkt. No. 29.

Plaintiff also filed a third amended complaint, further outlining additional claims and case law in support of previously alleged claims. *See generally* Dkt. No. 31.  In response, Defendant argues that the request to amend should be denied because even when considering the additional facts and claims, the petition still lacks merit. *See generally* Dkt. No. 38.

Rule 15 permits a Plaintiff to amend his pleading once, as a matter of course, within 21 days after service of a motion under Rule 12(b). Fed. R. Civ. P. 15(a)(1).  After more than 21 days have passed, a complaint may be amended only with the court's leave or the opposing party's written consent. *Topalian v. Ehrman*, 954 F.2d 1125, 1139 (5th Cir. 1992) (citing Fed. R. Civ. P. 15(a)).  "Although Rule 15(a) requires the district court to grant leave to amend freely, 'leave to amend is in no way automatic.'" *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).  "The district court is entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including 'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., and futility of the amendment.'" *Id.* (quoting *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005), *abrogated in part on other grounds*, *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).  A court may deny a motion to amend simply where allowing the amendment would be futile. *Marucci Sports*, 751 F.3d at 378 (citing *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003)).  Leave to amend should be denied where the amended claim would not survive a motion to dismiss under 12(b)(6). *Johnson v. PPI Tech. Servs., LP*., 605 F. App'x 366, 373 (5th Cir. 2015).

38

Both of Plaintiff's requests to amend his amended complaint should be denied because the additional facts do not cure the deficiencies outlined above and the additional claims lack merit. As further explained below, Plaintiff's second and third amended complaints would not survive a motion to dismiss and allowing such amendments would cause undue delay, waste of judicial resources, and would be futile.

A. **Additional Law and Facts Are Not Sufficient to State a Constitutional Violation Regarding Medical Treatment, Quality of Food, or Other Conditions of Confinement.**[10]

When considering Plaintiff's first motion to amend his amended complaint, the additional facts do not overcome a motion to dismiss. Plaintiff's additional facts include greater detail about Plaintiff's statements to officers after his initial arrest regarding his need for his blood pressure medication, cholesterol medication, and psychiatric treatment for his mental health disorders. (Dkt. No. 27 at 2, ¶1.3.) Plaintiff details that he reported his chest pains and thoughts of suicide to officers. (*Id.* at 2, ¶1.4.) In response to Plaintiff's reports, officers made Plaintiff strip to his underwear only while in the holding cell. (*Id.* at 3, ¶1.5.) Plaintiff continued asking for medical attention throughout the night, until the next morning when he "began to hyperventilate and have more severe chest pains and ... fell to the floor and began foaming at the mouth and became unconscious and unresponsive." (*Id.* at 5, ¶1.6.) At that point, officers called for medical attention. (*Id.*) During the examination by the doctor at the Urgent Care clinic, Plaintiff attempted suicide with a bed sheet. (*Id.* at 6, ¶1.7.) Plaintiff was subsequently discharged and sent back to the jail.

---

[10] In reference to Plaintiff's conditions of confinement claims, Plaintiff's Fourth Amended Complaint (Dkt. No. 42) contains no additional facts that are not already alleged in Plaintiff's previous filings. (Dkt. No. 42 at 6-7, ¶¶2.3, 2.4.) As such, the allegations made in Plaintiff's Fourth Amended Complaint are sufficiently addressed in this recommendation and there is no need to address the pleading. To the extent Plaintiff has raised any additional legal arguments based on the facts addressed herein, they are conclusory and without merit. *See Jones v. City of Austin*, 442 F. App'x 917, 920 (5th Cir. 2011) (*pro se* parties still must reasonably comply with the pleading standards contained in the Federal Rule of Civil Procedure).

(*Id.*)  Plaintiff also details the common symptoms and seriousness of hypertension and depression. (*Id.* at 7-8, ¶¶1.8, 1.9.)

In Plaintiff's third amended complaint, Plaintiff emphasizes that while in custody he was "forced to sleep on the floor without mattress or blanket in an extremely cold jail cell." (Dkt. No. 31 at 9, ¶1.5.7.)  Plaintiff also claims that during his first night in custody he was not fed, and then the following day he "was given two pieces of bread and a slice of bologna for lunch and a hot dog bun and wiener for breakfast." (*Id.*)

In response, Defendant argues that Plaintiff's additional facts still do not rise to the level required to state a constitutional claim. (Dkt. No. 29 at 5, ¶7.)  Specifically, Defendant argues that the additional facts do not rise to the level constituting deliberate indifference by officials nor satisfy the *Monell* factors. (*Id.*)

For the reasons detailed below, none of the additional facts regarding the medical treatment, quality of food, or cold temperatures give rise to a constitutional claim.

   i. Medical Treatment

After reviewing the additional facts provided regarding the medical treatment provided, Plaintiff's claims do not sufficiently set forth a claim that would survive a motion to dismiss. The facts provided do not rise to the level required to show that officials acted with deliberate indifference towards Plaintiff's medical needs. *Domino*, 239 F.3d at 574 (regarding medical care, a plaintiff's rights are violated when prison officials act with deliberate indifference to a prisoner's serious medical needs); *Estelle*, 429 U.S. at 104-05 (deliberate indifference includes "prison guards intentionally denying or delaying medical care or intentionally interfering with treatment once prescribed."). *See also supra* ¶III(B)(i)(1).

Many inmates enter the local jail system with existing medical and psychiatric conditions requiring medication, however, mere disagreement with the speed, quality, or extent of receiving the medical treatment needed to address these pre-existing conditions do not give rise to a constitutional claim. *Pea*, 2015 WL 4661646, at *15 ("Contentions like [petitioner's] that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim."); *Williams*, 2006 WL 83433, at *3 (inmate with diabetes, hypertension, anxiety, and chronic knee ailment who alleged that he was unable to obtain his medications timely failed to state a claim because he did not establish any substantial harm from the delay); *Laborde*, 2011 WL 336460, at *1, *5 (inmate failed to show deliberate indifference where he was not given his blood pressure medication for two to three weeks and, when treated, the doctor refused to give him his usual medication because negligent or mistaken medical treatment is not deliberate indifference).

Based on the facts alleged, Plaintiff went one day in confinement before receiving medical attention. (Dkt. No. 27 at 4-5, ¶1.6.) This short delay in receiving medical attention does not constitute deliberate indifference unless there is substantial harm caused by the delay. *Williams*, 2006 WL 83433, at *3. Plaintiff alleges no substantial harm resulting from this delay. Further, none of Plaintiff's initial medical needs were so serious that Plaintiff required immediate medical attention. And, whenever Plaintiff's medical needs rose to a level necessitating immediate medical attention, medical care was provided. (Dkt. No. 27 at 5, ¶1.6) (when Plaintiff began to have a seizure he was taken to Urgent Care for medical attention). *See Woodall*, 648 F.2d at 272 ("the essential test is one of medical necessity and not one simply of desirability."). Based on the facts, outlined by Plaintiff, and presumed true for this analysis, officers were not deliberately indifferent

41

to Plaintiff's medical needs; as such, Plaintiff's allegations are insufficient to overcome a motion to dismiss.

### ii. Cold Temperatures

The facts alleged in Plaintiffs third amended complaint that Plaintiff was kept in a cold cell without any means of warmth, even if assumed true, still do not meet the standard required to sufficiently allege a constitutional claim. To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities.'" *Alexander v. Tippah County*, 351 F.3d 626, 630 (5th Cir. 2003) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995)). And, after showing conditions depriving inmates of life's necessities, Plaintiff then must show that the prison officials were deliberately indifferent to the inmate's health or safety in continuing such deprivation. *Farmer*, 511 U.S. at 847. Once again, deliberate indifference "is a stringent standard, requiring proof that a municipal actor disregarded a known or obvious substantial risk or consequence of his action." *Southard v. Texas Bd. of Crim. Justice*, 114 F.3d 539, 551 (5th Cir. 1997) (quoting *Bd. of County Comm'rs of Bryan Cty., Ok.*, 520 U.S. at 410).

Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." *Talib*, 138 F.3d at 215 (citing *Rhodes*, 452 U.S. at 349); *accord Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). Specifically, "the lack of a mattress, cramped and crowded cell, cold floor and deprivation of personal possessions during his time on suicide watch" does not rise to the level required to state a constitutional violation because serving time in jail "is not a guarantee that one will be safe from life's occasional inconveniences." *Williamson v. Larpenter*, No. CV 19-254, 2019 WL 3719761, at *10 (E.D. La. July 15, 2019), *report and rec. adopted*, No. CV 19-254, 2019 WL 3718135 (E.D.

La. Aug. 7, 2019) (citing *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982)). The court considers the duration of time that an inmate is confined within the conditions complained of when determining whether there is a constitutional violation for the condition of confinement. *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978). As such, "[a] filthy, overcrowded cell ... might be tolerable for a few days and intolerably cruel for weeks or months." *Id.*; *see also Williams*, 2006 WL 83433, at *2 (noting that "[e]ven if the Jail conditions were substandard, the brief intervals that [petitioner] had to endure them weigh against establishing a civil rights violation." (citing *DeSpain v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001))).

In Plaintiff's third amended complaint, he alleges that, "[w]hile in custody [Plaintiff] was forced to sleep on floor without mattress or blanket in the extremely cold jail cell." (Dkt. No. 31 at 9, ¶1.5.7.) Plaintiff also states that during intake he informed officers that he suffered from severe mental health issues and was having thoughts of suicide. (Dkt. No. 27 at 2, ¶1.4.) After informing officials of his mental health condition, Plaintiff was told to strip down to underwear and was placed in an isolated cell. (*Id.* at 3-5, ¶¶1.5, 1.6.) Plaintiff spent the entire night acting erratically and complaining of worsening suicidal thoughts. (*Id.*) And, when Plaintiff ultimately received medical help, he attempted suicide with the bedsheet in the Urgent Care examination room. (*Id.* at 6, ¶1.7.)

Plaintiff takes issue with the fact that he was denied clothing or other means of warmth while being kept in a cold jail cell; however, Plaintiff discounts the fact that he consistently complained of mental health issues, including worsening suicidal thoughts. It is reasonable for inmates to be denied clothing and blankets while on suicide watch because it is one of the only methods of ensuring a suicidal inmates' safety. *Williamson*, 2019 WL 3719761, at *10 (citing *Holloway*, 685 F.2d at 156). Thus, refusing to provide Plaintiff sheets, clothing, or a blanket during

the short period of time that he was on suicide watch is not an extreme deprivation of the type that might offend the Constitution. As in Plaintiff's case, these conditions were wholly appropriate, if not necessary, in response to Plaintiff's reported suicidal thoughts and attempts, and in furtherance of the treatment and monitoring of his mental condition.

In Plaintiff's third amended complaint, Plaintiff cites to *Palmer v. Johnson*, 193 F.3d 346 (5th Cir. 1999), in support of his argument that the exposure to extremely cold conditions without protection or other means of warmth may rise to a constitutional violation. (Dkt. No. 31 at 9, ¶1.5.7.) Plaintiff's reliance on *Palmer* is misplaced because the underlying circumstances in *Palmer* are not comparable to Plaintiffs. In *Palmer*, the conditions of confinement were enough to state a constitutional claim, but the case did not turn solely on the cold conditions. The inmates in *Palmer* were subject to cold weather in conjunction with other deplorable conditions, all of which had reenforcing effect on each other and ultimately giving rise to a constitutional claim. *Palmer*, 193 F.3d at 353 (inmates were kept in "overnight outdoor confinement with no shelter, jacket, blanket, or source of heat as the temperature dropped, and the wind blew along with the total lack of bathroom facilities for forty-nine inmates sharing a small, bounded area").

When compared to the aforementioned conditions rising to the level of a constitutional violation, the conditions described by Plaintiff do not rise to a similar level of deprivation. The Fifth Circuit specifically emphasizes that the totality of the circumstances, i.e., cold conditions in conjunction with other serious conditions, is what gave rise to a claim in *Palmer*. *Id*. In contrast, Plaintiff does not allege any other serious conditions, such as lack of toilets, food, shelter, extreme overcrowding, physical injury, or similar in conjunction with the cold temperature. Moreover, in contrast to *Palmer*, the denial of clothing, sheets, and mattress was necessary to ensure Plaintiff's safety. Accordingly, the conditions, as described by Plaintiff, are not of the kind considered

44

inhumane, nor of the kind showing deliberate indifference to Plaintiff's health or safety. As such, Plaintiff's additional facts in support of his constitutional claim regarding the temperature of his cell would not overcome a motion to dismiss.

### iii. Quality of Food

Even when presuming Plaintiff's allegations surrounding the quality and quantity of food provided while in custody as true, Plaintiff has not alleged sufficient facts to state a constitutional claim. Once again, only extreme deprivations rise to the level of a constitutional claim based on the conditions of confinement. *Hudson*, 503 U.S. at 8-9. "To comply with the Constitution, inmates must receive 'reasonably adequate' food." *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996) (per curiam) (citing *George v. King*, 837 F.2d 705, 707 (5th Cir. 1988)). "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" *Talib*, 138 F.3d at 214 n.3 (quoting *Wilson*, 501 U.S. at 298 (internal quotations omitted)). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." *Id.* Even on a regular, permanent basis, two meals a day may be adequate. *Green*, 801 F.2d at 770–71. There is no constitutional violation where an inmate alleges nothing but "hunger pains" and suffers no "specific physical harm or effects" nor alleges any allegations that the meals provided put his health at risk. *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (missing eight meals over a seven-month period was not unconstitutional).

Plaintiff states that "[w]hile in custody … the first night [Plaintiff] was not fed at all. The following day [Plaintiff] was given two pieces of bread and a slice of bologna for lunch and a hot dog bun and wiener for breakfast." (Dkt. No. 31 at 9, ¶1.5.7.) Plaintiff only alleges that he missed one meal on his first night in custody. (*Id.* at 9, ¶1.5.7.) Missing one meal over the course of one day is "hardly more than that missed by many working-class citizens over the same period" and

45

does not rise to the level of inhumane treatment. *Talib*, 138 F.3d at 214 n.3. Plaintiff alleges no

physical harm or effects because of the meals provided, nor does he allege any risk posed to his

health. Based on these facts, Plaintiff was not denied a sufficient amount of food over an extended

period of time. *See Green*, 801 F.2d at 770-71. Thus, again assuming the facts as true, Plaintiff

still fails to state a claim to overcome a motion to dismiss.

**B.    Additional Law and Facts Do Not Satisfy *Monell* Factors**[11]

Even if the facts above did rise to the level required to state a constitutional claim,

Plaintiff's complaint against the city would still require dismissal because he has not shown facts

sufficient to comply with the *Monell* factors. As previously addressed, Plaintiff's claims against

the City of Edinburg or officials acting in their official capacity must be alleged pursuant to an

official policy, custom or practice. *Monell*, 436 U.S. at 690. As noted, holding municipal liable

under § 1983 requires proof of three elements: a policymaker, an official policy, and a violation

of constitutional rights whose 'moving force' is the policy or custom. *Piotrowski*, 237 F.3d at 578

(citing *Monell*, 436 U.S. at 694).

In Plaintiff's amended complaints, he attempts to remedy the previously mentioned

shortcomings under *Monell* by identifying the officers in the prison, city council members, and the

judges involved in his case as "policymakers" who implemented a "policy or custom of violating

inmates' constitutional rights." Each theory will be addressed below.

---

[11] The undersigned has reviewed the additional legal arguments raised in Plaintiff's Fourth Amended Complaint regarding the *Monell* requirements and finds Plaintiff's arguments unpersuasive. (Dkt. No 42.) Plaintiff's Fourth Amended Complaint simply requests this Court to deviate from the holding in *Monell* to hold the municipal liable in his case.   Specifically, Plaintiff relies on law review articles and other non-binding scholarly materials that provide a historical account of the *Monell* case law and appear to suggest change in the legal precedent. (Dkt. No. 42 at 2-4, ¶I.) Unfortunately for Plaintiff, *Monell* is binding legal precedent. Thus, for the reasons previously stated, Plaintiff's Fourth Amended Complaint lacks merit.

i.   Officers as "Policymakers"

In Plaintiff's third amended complaint, Plaintiff argues that he has remedied the previously

mentioned shortcomings, *see supra* III(B)(ii), (C)(ii), under *Monell*.   (Dkt. No. 31 at 8, ¶1.5.6.)

Specifically, Plaintiff alleges that the routine denial of medical treatment and the overall conditions

of confinement of mentally ill inmates are subjected to constitute an official policy or practice.

(*Id.* at 9, ¶1.5.7.)  Plaintiff cites case law in support stating that, "'a single decision by an official

with policy-making authority in a given area could constitute an official policy and be attributed

to the government itself.'"  *See id.* at 8, ¶1.5.6 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469

(1986)).  Plaintiff's argument that the officials carrying out their duties regarding medical services

fails for two reasons, the "policy" or "custom" identified is not unconstitutional and the officers

are not considered "policymakers" when carrying out their duties.

First, it should be addressed that this custom, whether considered a policy or not, is

constitutional.  Plaintiff continues to argue that he has met the *Monell* factors, but fails to

understand that the "official action, policy, or practice" alleged – i.e., the "common practice to

house inmates with alleged mental health problems in solitary confinement, strip them naked or

down to their underwear, and that the extremely cold conditions in these cells are worse than in

other holding cells" (Dkt. No. 31 at 9, ¶1.5.7) – does not rise to level of a constitutional violation.

The constitutionality of said practice has been extensively outlined above.  Thus, determining

whether those factual allegations constitute an official policy or practice implemented by a

policymaker is unnecessary because *those practices do not violate any of Plaintiff's constitutional*

*rights*.  Plaintiff must allege an official policy, practice, or custom that violates his constitutional

rights to satisfy the *Monell* factors.  As such, his claim does not survive a motion to dismiss.

47

Nonetheless, if the conduct was considered unconstitutional, Plaintiff's claim still fails because the officers working at the city jail are not considered "policymakers." Plaintiff argues that "particular officers may have authority to establish binding county policy respecting particular matters and to adjust that policy for the county in changing circumstances." (*Id.* at 10, ¶1.6.)

The Fifth Circuit has distinguished between final decision-making authority and final policymaking authority. *See Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir.1993) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 n.12 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988)). A municipal policymaker is someone who has "the responsibility for making law or setting policy in any given area of a local government's business." *Praprotnik*, 485 U.S. at 125. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481. "[D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 549 (5th Cir. 2008) (citing *Pembaur*, 475 U.S. at 483-84; *Praprotnik*, 485 U.S. at 130).

Plaintiff references a "common practice" of unconstitutional treatment of mentally ill inmates by the officers at the city jail. (Dkt. No. 31 at 8-9, ¶¶1.5.6, 1.6.) Plaintiff alleges that the officers of the jail who routinely carry out the "unconstitutional practice" regarding medical treatment are considered policymakers. (*Id.*) However, the authority to carry out a particular duty or function does not mean that person has final policymaking authority over that function. *Bolton*, 541 F.3d at 549. There are no facts alleged by Plaintiff suggesting that the officials had the authority sufficient to be considered a final policymaker with respect to any condition of Plaintiff's confinement. Thus, there are no facts stated by Plaintiff showing that these officials had any

policymaking authority sufficient to satisfy *Monell* and the claim does not survive a motion to dismiss.

### ii. Judges as "Policymakers"

Plaintiff's argument that the Judges on his case are considered "policymakers" fails because Judge Bustos was acting pursuant to his judicial duties, as outlined above, *see supra* ¶III(C), and Plaintiff has not stated any facts showing that Judge Palacios was involved in Plaintiff's case in either his administrative or judicial capacity. The Fifth Circuit has "repeatedly rejected" recognizing a municipal judge as a policymaker or that their decisions constitute municipal policy. *Cunningham*, 380 F. App'x. at 421; *Johnson*, 958 F.2d at 94;  *Scott*, 596 F. Supp. 3d at 632. In sum, Judges will only be considered a "policymaker" where the decision giving rise to the constitutional violation was made pursuant to their administrative duties, not their judicial duties. *Johnson*, 958 F.2d at 94; *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980) (distinguishing judge's administrative duties, actions pursuant to which may constitute county policy under *Monell*, from judge's judicial function, in which he or she effectuates state policy by applying state law). A municipal judge acting in his or her judicial capacity to enforce state law does not act as a municipal official or policymaker. *See also Bigford v. Taylor*, 834 F.2d 1213, 1221–22 (5th Cir. 1988).

Plaintiff continues to argue that Judge Palacios and Judge Bustos are "the final authority or ultimate repository of municipal power" because they "oversee unwritten customs or practices that apply municipal-wide to the regulation of bail and pretrial detention of arrestees." (Dkt. No. 34 at 4, ¶2.1.) Plaintiff's argues that both Judge Palacios and Judge Bustos were acting as policymakers based on their inherent position and authority overseeing the customs and practices of the pretrial detainees. (*Id.*) Plaintiff further argues that Judge Bustos and Judge Palacios'

"specific function for the City of Edinburg [is to] make the final policy [as] policymakers as to the issues of setting bail and appointing counsel to accused indigents." (Dkt. No. 31 at 4, ¶1.5.)

However, the alleged constitutional violations occurring under Judge Bustos, were taken pursuant to his official judicial capacity, *not* his administrative capacity. *See supra* ¶III(C). Once again, Plaintiff's constitutional claims regarding Judge Bustos involve the actions taken by Judge Bustos in setting bail and appointing counsel, both of which are the typical everyday judicial duties of municipal judges. *See Davis v. Tarrant Cty., Tex.*, 565 F.3d 214, 221, 223 (5th Cir. 2009) (the appointment of counsel is considered a normal judicial function) (internal citations omitted); *Chachere v. Houston Police Dept.*, No. H-05-3187, 2006 WL 3391443, at *4 (S.D. Tex. Nov. 21, 2006) (setting bond is a judicial function).   Thus, Judge Bustos cannot be considered a "policymaker" regarding the allegedly unconstitutional actions identified.

Further, Plaintiff continues citing to Judge Palacios as a policymaker but does not state any direct involvement of Judge Palacios, in any capacity.   Plaintiff points to no policy enacted by Judge Palacios in his administrative capacity that violated his constitutional rights.   As such, Judge Palacios' "acts" are not sufficient to satisfy the *Monell* factors required for municipal liability. Thus, any attempt to use Judge Palacios or Judge Bustos' actions to achieve municipal liability under *Monell* fails because Plaintiff has not identified a policy implemented by either judge, when acting with deliberate indifference and pursuant to their administrative duties, that caused a violation of Plaintiff's constitutional rights. *Renfro v. City of Kaufman*, 27 F. Supp. 2d 715, 717 (N.D. Tex. 1998) (citations omitted).

### iii.   City Council Members as "Policymakers"

When considering the claims against the city council members Plaintiff must identify an official policy or custom implemented by named members that caused his constitutional injury

because there is no *respondeat superior* liability under § 1983. *Monell*, 436 U.S. at 691; *see also Oliver v. Scott*, 276 F.3d 763, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory liability or *respondeat superior* liability."); *see also Hudson v. City of Laurel*, 290 F. App'x 748, 749 (5th Cir. 2008) (a city cannot be held liable under § 1983 without showing a custom or policy violating the plaintiff's constitutional rights). Plaintiff has failed to allege any policy or custom implemented by any council member that violated his constitutional rights, much less any facts showing that the council members had knowledge of the facts surrounding Plaintiff's complaint. *Iqbal*, 556 U.S. at 662 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory allegations, will not suffice" to overcome a motion to dismiss).

## C.     Immunity Defeats All Claims Against Defendants in Individual Capacities

Because Plaintiff cannot show any facts sufficient to satisfy the *Monell* factors, Plaintiff's next option is to bring his claim against the parties directly. *Perez v. United States*, 312 F.3d 191, 194-95 (5th Cir. 2002) (holding that the courts must construe the pleadings of *pro se* litigants liberally). However, for the reasons explained below, Plaintiff has failed to allege any facts sufficient to overcome either qualified or judicial immunity as to each named employee. Thus, Plaintiff's claims against the named employees of the defendants should be dismissed.

### i.     "John Doe" Officers

In Plaintiff's second amended complaint, he seeks to hold officers identified as "John Does #2 and #3" liable for various constitutional violations in both their individual and official capacity. (Dkt. No. 27 at 9, ¶3.3.) In response, Defendant argues that the conduct complained of is not sufficient to show deliberate indifference, as required to overcome immunity. (Dkt. Nos. 29 at 5, ¶7.)

Officers enjoy protection from qualified immunity when named in their individual capacities for actions within the scope of their official duties. *Cunningham v. Castloo*, 983 F.3d

51

185, 190 (5th Cir. 2020). To overcome qualified immunity, plaintiff must allege facts showing the official violated a constitutional right and that violation was objectively unreasonable. *Id.* at 190-91. A "defendant's acts are ... objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution ... as alleged by the plaintiff." *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001). Once again, the facts alleged by Plaintiff are not sufficient to satisfy the first requirement to overcome immunity, a clear violation of his constitutional rights. For all the reasons previously mentioned, *see supra* ¶III(B)(i)(1), ¶III(B)(i)(3), ¶IV(A)(i),(ii), the officials' actions do not rise to the level of a constitutional violation.

For similar reasons, even if the facts did show a clear constitutional violation, Plaintiff has failed to state sufficient facts showing that the officers acted unreasonably under the circumstances. The reason Plaintiff was placed in a cell by himself and without his clothing was for Plaintiff's own protection as he was claiming he was suicidal. (Dkt. No. 27 at 2, ¶1.4.) *See also, supra* ¶III(B)(i)(1), (3), ¶IV(A)(ii). In fact, and tragically, the validity of their activity was shown when, provided the opportunity, Plaintiff did try to take his own life by using a bed sheet. (*Id.* at 6, ¶1.7.) Thus, it cannot be said that the officers' conduct was unreasonable considering the circumstances. Further, regarding medical care, the officers did not act unreasonable in providing medical care. Assuming the facts alleged by Plaintiff are true, medical care was provided when it became necessary. *See supra*, ¶III(B)(i)(1), ¶IV(A)(i).

Thus, for the reasons explained above, Plaintiff has failed to allege facts showing either prong required to overcome immunity, and thus, Plaintiff's claim still requires dismissal.

ii.  Former Mayor and Unnamed City Council Members

In Plaintiff's second amended complaint, Plaintiff seeks to join members of the Edinburg City Counsel and former Mayor Richard Molina as Defendants. (Dkt. No. 27 at 9, ¶¶3.2, 3.3). In

response, Defendant notes adding Mayor Molina and the unnamed council members would be considered a claim against the City and therefore barred by qualified immunity. (Dkt. No. 29 at 3, ¶5.) And, Defendant argues, Plaintiff fails to state any facts showing that either Mayor Molina or any council members had any knowledge of the facts raised by Plaintiff. (*Id.* at 4.)

"Qualified immunity shields government officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would know." *Cunningham*, 983 F.3d at 190 (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Further, "a supervisory official may be held liable … only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter*, 659 F.3d at 446-47 (citing *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). To show a supervisor's affirmative participation in the conduct, "plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Id.*

Once again, there are no facts stated giving rise to a constitutional violation, but if there were, no liability would result because neither Molina nor Council members acted with deliberate indifference regarding the subordinates' actions. Further, Plaintiff does not allege any facts tending to show that Molina or Council members had knowledge of the conduct described in any of Plaintiff's complaints, much less any participation in the conduct sufficient to show they affirmatively participated in the unconstitutional conduct. *Porter*, 659 F.3d at 446-47 (citing *Gates*, 537 F.3d at 435). Thus, despite Plaintiff's failure to allege facts showing a constitutional violation on behalf of said parties, Plaintiff's claim is also barred by qualified immunity.

### iii. Municipal Judges Hector Bustos and Toribio "Terry" Palacios

In Plaintiff's second amended complaint, Plaintiff seeks to add the City's municipal judges, Hector Bustos and Terry Palacios as Defendants. (Dkt. No. 27 at 9, ¶¶3.1, 3.3.) In response, Defendant argues that the claims against the judges would be barred because Judge Palacios was not involved in Plaintiff's case and Judge Bustos is protected under judicial immunity. (Dkt. No. 29 at 2, ¶ 4.)

To the extent Plaintiff is bringing his claim against either Judge for any conduct related to Plaintiff's bond, arraignment, or conviction, both Judges are entitled to absolute judicial immunity because Plaintiff has not shown that either Judge acted in clear absence of jurisdiction or outside their judicial capacity regarding such hearings. *See DeLeon v. City of Haltom City*, 106 F. App'x 909, 912 (5th Cir. 2004); *see also Davis*, 565 F.3d at 223 (the appointment of counsel is considered a normal judicial function) (internal citations omitted); *Chachere*, 2006 WL 3391443, at *4 (setting bond is a judicial function). The fact that Plaintiff disagrees with Judge Bustos' determinations does not overcome judicial immunity, nor does Plaintiff's belief that said determinations were done with malice or ill intent. *Jewell*, 2022 WL 1129910, at *4. *See also Stump v. Sparkman*, 435 U.S. 349, 363 (1978) ("Disagreement with the action taken by the judge, however, does not justify depriving that judge of his immunity."); *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (noting "that judicial immunity is not overcome by allegations of bad faith or malice"). Plaintiff has not alleged any facts tending to show that Judge Bustos acted without jurisdiction, and thus, Judge Bustos is entitled to judicial immunity regarding any claim involving bail or appointment of counsel. And even though no facts are alleged that Judge Palacios was involved with such judicial decisions, even if Judge Palacios was, for same reasons he is entitled to judicial immunity.

54

Plaintiff also alleges constitutional violations against former Municipal Judge Palacios, based on his role as a policymaker in charge of arraignment, bond, and training other officers within the Edinburg municipal system. (Dkt. Nos. 27 at 9, ¶3.2; 31 at 10, ¶1.6.) Because Judge Palacios was not involved in this case, it appears that Plaintiff is attempting to bring Judge Palacios into the case to allege that Judge Palacios' administrative duties in connection with setting bail, appointing counsel, and training judicial officers makes him an official policymaker and thus, imposes city liability. (Dkt. No. 31 at 10, ¶1.6.)   To the extent Plaintiff is bringing the claims against Judge Palacios on other grounds, the claims would fail because Judge Palacios is entitled to judicial immunity.  Further, Plaintiff has alleged no facts showing that Judge Palacios was involved in Plaintiff's claims in an administrative capacity. *Porter*, 659 F.3d at 446-47.

### D.  **Miscellaneous Claims**

In Plaintiff's second amended complaint, he attempts to add claims under the Civil Rights of Institutionalized Persons Act of 1980, 42 U.S.C. § 1997, *et seq.*, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794, *et seq..* (Dkt. No. 27 at 8, ¶2.1.) Plaintiff brings his claim against Defendant "for willfully discriminating against him and failing to provide adequate medical attention and facilities." (*Id.*) In support, Plaintiff alleges no additional facts other than the ones already discussed in support of previous claims.

As addressed by Defendant, the Civil Rights of Institutionalized Persons Act of 1980 does not confer a private cause of action.  42 U.S.C. §1997a.  Thus, Plaintiff lacks the ability to bring a claim under the statute. *See Quick v. Stephens*, No. 3:14-CV-83, 2017 WL 4174916, at *7 (S.D. Tex. Sept. 18, 2017) (noting that there is "ample authority" holding that the Civil Rights of Institutionalized Persons Act does not create a private cause of action (citations omitted)).

To establish a claim under the ADA, a plaintiff must show that "(1) he is a qualified individual with a disability within the meaning of the ADA; (2) he was excluded from participation or denied meaningful services, programs or activities, or that he was otherwise discriminated against by the defendants; and (3) such exclusion, denial of benefits, or discrimination is by reason of his disability." *Quick*, 2017 WL 4174916, at \*7 (citing *Lightbourn v. Cty. of El Paso, Tex.*, 118 F.3d 421, 428 (5th Cir. 1997)). And, "the elements necessary to state a case of discrimination under the Rehabilitation Act are 'operationally identical' to those under the ADA." *Taylor v. Hartley*, 488 F. Supp. 3d 517, 543 (S.D. Tex. 2020) (citing *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 676 n.8 (5th Cir. 2004)).

Plaintiff has failed to allege that he is considered a person with a disability and afforded protection under either the ADA or Rehabilitation Act. Further, even assuming a disability, Plaintiff has failed to allege facts showing that he was "excluded from participation in or being denied the benefits of the services, program, or activities" by reason of said disability. 49 U.S.C. § 12132; 29 U.S.C. § 794a. In other words, Plaintiff has not stated any facts showing that he was denied some benefit that other non-disabled people received, or that he was denied that benefit simply because of a disability as required to state a claim under both the ADA and the Rehabilitation Act.

For noted reasons, Plaintiff's three additional claims would not survive a motion to dismiss.

## E.   Plaintiff's Amendments are Unduly Burdensome to Defendant, Creates Unnecessary Delay and are Futile

Plaintiff has already been granted the opportunity to amend his complaint before. (Dkt. No. 22.) This opportunity was granted after Defendants already filed their first motion to dismiss regarding Plaintiff's initial complaint. Defendants were then required to file an additional motion to dismiss Plaintiff's amended complaint. Now, Plaintiff attempts to amend his amended

complaint three times – once three weeks after Defendant filed their second motion to dismiss, and again, four weeks after Defendant's filing, and, finally, Plaintiff filed his third amendment a month after this Court ordered Plaintiff to cease filing amendments. As stated by Defendant, Plaintiff had the opportunity to cure the deficiencies outlined in the Defendant's first motion to dismiss in Plaintiff's first amended complaint. (*See* Dkt. Nos. 29, 38.) Instead of stating facts that would cure said deficiencies, Plaintiff realleged similar allegations and added additional claims that also lack merit. (*Compare* Dkt. No. 22 *with* Dkt. Nos. 27, 31, 42.) And, still, even when considering the additional facts outlined in his second, third, and fourth amended complaints, the shortcomings are not cured, and the additional legal arguments are without merit.

Plaintiff also attempts to argue that his circumstances, namely his status as a *pro se* inmate, has made it exceptionally difficult to adequately plead his legal and factual arguments. (Dkt. No. 42 at 11, ¶4.1.) While those difficulties are not discounted, such argument is unpersuasive considering Plaintiff has not appeared to suffer any shortage of resources due to his status, which is evidenced by his nearly 20 motions filed in this matter, all of which contain references to significant amounts of case law and other scholarly materials. Thus, allowing the amendment would be a waste of judicial resources, create undue delay, and be futile because Plaintiff's complaint would still not survive a 12(b)(6) motion. *See also Butler v. S. Porter*, 999 F.3d 287, 298 (5th Cir. 2021).

## V.      MOTION FOR CLASS CERTIFICATION

On December 12, 2022, Plaintiff filed a Motion for Class Certification. (Dkt. No. 32.) Plaintiff seeks to certify a class of people under Federal Rules of Civil Procedure 23. (*Id.* at 1, ¶1.1.) The proposed class includes all Class A and Class B misdemeanor arrestees who have been granted bail but cannot pay the amount required for release because of their indigency. (*Id.* at 2,

¶1.2.) In response, Defendant argues that Plaintiff has not met his burden in establishing Rule 23

certification. (Dkt. No. 39 at 1-2, ¶1.) Specifically, Defendant argues that Plaintiff does not have

standing on behalf of the proposed class nor has he stated facts sufficient to state a constitutional

claim. (*Id.* at 2-3, ¶¶2, 3.)

Without addressing the shortcomings regarding standing,[12] Plaintiff's request to certify and

class action can be readily dismissed as Plaintiff is not the proper candidate to represent the class.

Moreover, Plaintiff's request to certify should be denied because Plaintiff's claim lacks merit.

The district court has wide discretion in deciding whether to certify a proposed class.

*McGrew v. Tex. Bd. of Pardons & Paroles*, 47 F.3d 158, 162 (5th Cir. 1995). Nonetheless,

Plaintiffs bear the burden of establishing the propriety of class certification. *Madison v. Chalmette*

*Ref., L.L.C.*, 637 F.3d 551, 554–55 (5th Cir. 2011). An action may be maintained as a class action

if it meets the criteria of "numerosity, commonality, typicality, and adequacy of representation";

the questions of law or fact involved "predominate" over any issues affecting individual members

of the class; and a class action is the "superior" method of handling the action. *Jenkins v. Raymark*

*Industries, Inc.*, 782 F.2d 468, 471 & n.4 (5th Cir. 1986) (citing Fed. R. Civ. P. 23(a), (b)(3)).

Under Rule 23(a)(4), the plaintiffs must show they are an adequate representation of the

class. *See* Fed. R. Civ. P. 23(a)(4). This requires the court to find that the class representative,

their counsel, and the relationship between the representative and their counsel are adequate to

protect the interest of absent class members. *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir.

---

[12] *See United States v. Sanchez-Gomez*, -- U.S. --, 138 S. Ct. 1532, 1538 (2018) (holding that where the pretrial detainee is released prior to resolution the submitted claim is moot). *Sanchez-Gomez* detailed the confines of "mootness" regarding pre-trial detainees bringing a non-class action suit. Importantly, the court held that since the case does not involve any formal mechanism for aggregating claims, and the mere presence of allegations that might, if resolved in detainees favor, benefit other similarly situated people does not save the mootness of the suit once the representative's individual claim has dissipated. *Sanchez-Gomez*, 138 S. Ct. at 1540-41. And the Court held that the case or controversy requirement is not satisfied by the possibility that a party will be prosecuted for violating valid criminal laws in the future. *Id.*

2005) (citing *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)). *Pro se* litigants are not adequate to represent absent class members. *See McGrew v. Texas Bd. of Pardons and Paroles*, 47 F.3d 158, 162 (5th Cir. 1995) (per curiam) (citing *Gonzalez v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1973)); *see also DeBrew v. Atwood*, 792 F.3d 118, 132 (D.C. Cir. 2015) ("[A] *pro se* litigant who is not trained as a lawyer is simply not an adequate representative."). Thus, even if Plaintiff could satisfy the first three requirements for class certification under Rule 23, considering Plaintiff's *pro se* status, Plaintiff is not the proper representative for the class of people identified and his request for certification should be denied. *See* Fed. R. Civ. P. 23(a) (setting forth the prerequisites for class certification.)

Assuming *arguendo*, Plaintiff's motion for certification is denied because his claims lack merit. In making the determination of whether a proposed class complies with Rule 23, "courts must undertake a rigorous analysis of Rule 23's prerequisites by probing beyond the pleadings to understand the claims, defenses, and relevant facts." *Conrad v. General Motors Acceptance Corp.*, 283 F.R.D. 326, 328 (N.D. Tex. 2012); *see also M.D. ex. rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012) (district courts must "look beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of certification issues."); *see also Miller v. Mackey Intern., Inc.*, 452 F.2d 424, 428-29 (5th Cir. 1971) ("Purely vexatious [class action] litigation could be halted by a Rule 12 motion to dismiss or a Rule 56 motion for summary judgment.") Thus, because Plaintiff's allegations regarding the constitutionality of bond have been dismissed on a variety of grounds as explained above this Court finds Rule 23 certification unnecessary.

For the reasons outlined above, Plaintiff's request for certification should be denied.

## VI.   <u>MOTION TO REMAND</u>

Plaintiff has filed a motion to remand or, in the alternative, a motion to sever and remand. (Dkt. No. 35.)   Defendant filed a notice of removal pursuant to Plaintiff's complaint on July 17, 2022. (Dkt. No. 1.)  Plaintiffs motion to remand was filed on December 16, 2022.  (Dkt. No. 35.) Defendant filed a response to Plaintiff's motion to remand, arguing that Plaintiff failed to state that his claims were brought under the Texas Constitution, in part or whole, and as such, this Court has jurisdiction to hear the claims. (Dkt. No. 40.)  Further, Defendant argues that even if some claims are brought under the Texas Constitution, Plaintiff has not identified any reason why this Court should not exercise supplemental jurisdiction over such related claims.  (*Id.*)   Because this Court has subject matter jurisdiction to hear the claims, Plaintiff's motion to remand can be readily denied as untimely filed.

Under 28 U.S.C. § 1447(c), a motion to remand "on the basis of any defect other than lack of subject matter jurisdiction must be made within thirty (30) days after the filing of notice of removal under section 1446(a)."  Plaintiff has filed the motion to remand nearly five months, or 152 days, after Defendant's notice of removal was filed.  As such, Plaintiff's motion is untimely, and must be denied unless Plaintiff can show that this Court lacks subject matter jurisdiction. *See Hulsey v. State of Tex.*, 929 F.2d 168, 171 (5th Cir. 1991) ("The right of self-representation does not exempt a party from compliance with the relevant rules of procedural and substantive law." (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981))).

Plaintiff's complaint was originally removed from the 206th Judicial District Court of Hidalgo County, Texas, by reason of federal question under 28 U.S.C. § 1331. (Dkt. No. 1 at 1-2.)  Plaintiff's claims are all brought pursuant to constitutional violations under § 1983 or § 1985, giving this Court proper jurisdiction. In Plaintiff's original complaint, Plaintiff failed to assert that

the causes of action were asserted pursuant to the Texas Constitution. (*See generally* Dkt. No. 1-2.) In fact, the basis of Plaintiff's claims has been consistently asserted as "unconstitutional acts" of Defendant's employees. (*See* Dkt. Nos. 1-2; 22.)   As such, Plaintiff's case involved federal question regarding constitutional torts under 42 U.S.C. § 1983. *See Gilbert v. Cates*, No. CV 20-3428-WBV-KWR, 2021 WL 792709, at *3 (E.D. La. Mar. 2, 2021) ("Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the state court petition." (citing *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998))).

In response to Plaintiff's claims, Defendant has made their arguments pursuant to the standard required to state a claim under 42 U.S.C. § 1983 in multiple pleadings (*see generally* Dkt. Nos. 3, 25, 29) and Plaintiff has never argued that this standard was improper in response (*see generally* Dkt. Nos. 23, 27, 28). And, as stated by Defendant, there was no common law or state statutory grounds asserting causes of action for false arrest, wrongful imprisonment or deliberate indifference to conditions of confinement; as such, there is no other way to interpret Plaintiff's complaint other than under the United States Constitution at time of removal. *See Gilbert*, 2021 WL 792709, at *4 n.43 (subject matter jurisdiction is judged at time when complaint is filed (citing *St. Paul Reinsurance Co., Ltd.*, 134 F.3d at 1253)).

It is worthwhile to observe that in Plaintiff's motion to remand, for the first time thus far, Plaintiff wishes to bring all his constitutional claims under the Texas Constitution, instead of § 1983. Plaintiff's attempt to bring additional state law claims does not deprive this Court of jurisdiction over the already plead §§ 1983 and 1985 claims that have been addressed above. *Gilbert*, 2021 WL 792709, at *4 (plaintiff cannot "avoid federal jurisdiction by simply 'artfully pleading' a federal cause of action in state law terms." (citing *Avitts v. Amoco Prod. Co.*, 53 F.3d

690, 693 (5th Cir. 1995) (citation omitted)).  Plaintiff has had ample opportunity, as evidenced by

his second and third amended complaints, to address or raise any state law claims.  Instead,

Plaintiff has consistently maintained that his claims derive from the violation of the rights

guaranteed to him by the United States Constitution.  (*See* Dkt. No. 1-2 at 4-5, ¶¶6.2, 6.3, 6.4; Dkt.

No. 22 at 4, ¶V, at 6, ¶¶2, 3, 5, 6; Dkt. No. 23 at 1-3, ¶¶1-5, at 3-4, ¶¶7-10.)  Plaintiffs last minute

attempt to "artfully plead" his federal law claims in state law terms is not sufficient to deprive this

Court of federal jurisdiction. *See Gilbert*, 2021 WL 792709, at *4.  Furthermore, to the extent any

claim in the first amended complaint invokes a claim under state jurisprudence, because the claim

inherently derives from "a common nucleus of operative fact" with Plaintiff's federal

constitutional claims, this Court maintains jurisdiction to hear the whole case via supplemental

jurisdiction. *See United Marine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); *State Nat'l Ins. Co.
v. Yates*, 391 F.3d 577, 579 (5th Cir. 2004); *see also* 28 U.S.C. § 1367(a), (c).

For all the above reasons, Plaintiff's motion to remand, or sever and remand, should be

denied and request for sanctions should be denied as moot.  Prior to this attempt to avert federal

jurisdiction, the only plausible state law claim Plaintiff pled was intentional infliction of emotional

distress.  As noted, the claim is based on the same set of alleged facts that form the basis of the

claims under §§ 1983 and 1985 and, upon consideration under supplemental jurisdiction, said

claim should be dismissed. *See supra* ¶III(E).

### VII.   MOTION FOR APPOINTMENT OF COUNSEL

There is no automatic right to appointment of counsel in a case proceeding under § 1983.

*Jackson v. Dallas Police Dept.*, 811 F.2d 260, 261 (5th Cir. 1986).  An indigent plaintiff is

ineligible for appointment of counsel unless the court finds his claims meet a level of plausibility.

*Naranjo v. Thompson*, 809 F.3d 793, 799 (5th Cir. 2015).  If the plaintiff's claim meets the required

threshold of plausibility, counsel will only be appointed where plaintiff shows exceptional circumstances necessitating counsel. *Dallas Police Dept.*, 811 F.2d at 261. Such circumstances depend on the type and complexity of the case, petitioner's ability to adequately represent himself, presence of evidence requiring skill and presentation, and the likelihood that petitioner would benefit from appointment of counsel. *Parker v. Carpenter*, 978 F.2d 190, 193 (5th Cir. 1992).

Plaintiff has requested appointment of counsel based on his *pro se* status, inability to afford legal representation, and lack of resources because of his financial status and incarceration. (Dkt. No. 26.) Plaintiff argues that his case presents an "exceptional circumstance" for which counsel should be appointed. (*Id.* at 2-3, ¶¶5, 6.) As explained above, Plaintiff's case lacks merit, and thus, his claim does not meet the threshold plausibility requirement to be eligible for court appointed counsel. And, assuming Plaintiff alleged a plausible claim of relief, the issues presented are not complex, and Plaintiff has done an adequate job explaining his legal and factual theories. Plaintiff has shown no difficulty referring to legal materials nor an inability to investigate his own case. As the record indicates, Plaintiff has continuously demonstrated his ability to adequately represent himself and there are no exceptional circumstances warranting appointment of counsel.

## VIII.  CONCLUSION

### *Recommended Disposition*

After careful review of the record and relevant law, the undersigned recommends that Defendant's Motion to Dismiss (Dkt. No. 25) be **GRANTED**, and therefore, that Plaintiff's Requests to Amend his Amended Complaint (Dkt. Nos. 27, 31, 42), Request for Appointment of Counsel (Dkt. No. 26), Request for Class Certification and Request for Counsel (Dkt. No. 32), and Motion to Remand and/or Sever and Remand (Dkt. No. 35) all be summarily **DENIED**.

Further, that Defendant's first Motion to Dismiss (Dkt. No. 3) and Plaintiff's Motion Requesting Sanctions for Improper Removal (Dkt. No. 41) be **DENIED** as moot.

And, that Plaintiff's Complaint (Dkt. No. 1-2) and Amended Complaint (Dkt. No. 22) be **DISMISSED with prejudice** and this matter be formally closed out.

### *Notice to the Parties*

The Clerk shall send copies of this Report and Recommendation to Plaintiff, who has fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file timely written objections shall bar an aggrieved party from receiving a *de novo* review by the District Court on an issue covered in this Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

### *Admonishment*

"Courts possess the inherent power 'to protect the efficient and orderly administration of justice and ... to command respect for the court's orders, judgments, procedures, and authority.'" *Clear v. JPMorgan Chase Bank, N.A.*, 491 F. Supp. 3d 207, 218 (N.D. Tex. 2020) (quoting *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993) (per curiam)). "Included within this power is 'the power to levy sanctions in response to abusive litigation practices." *Id.* (citations omitted). And while the Federal Rules of Civil Procedure "do not provide for a motion to strike documents or portions of documents other than pleadings," *see* Fed. R. Civ. P. 12(f), courts still have the ability to strike documents as part of their inherent power to control their dockets. *Greer v. Unum Life Insurance Co. of America*, 556 F. Supp. 3d 590, 592 (S.D. Miss. 2021). Finally, proceeding as a *pro* se litigant does not provide "a license to harass others, clog the judicial machinery with meritless

litigation, abuse otherwise already overloaded court dockets." *Ferguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

Plaintiff has filed leave to amend his complaint three times and various responses to Defendant filings. Each party has sufficiently presented their respective arguments. As set forth above, with the filing of this Report and Recommendation, each party will have 14 days to file objections to the report. The filing of timely objection by either party or both parties does not give authorization, license or permission to file a reply or leave to file a reply. Any additional filings after the initial objections, under the inherent power of the Court, may be stricken from the record without any further consideration.

**DONE** at McAllen, Texas, this 1st day of February 2023.

Juan F. Alanis
United States Magistrate Judge